488 A.2d 192

**Norman R. STIFLER, et al.**

v.

**SEYMOUR WEINER, M.D., P.A., et al.**

**No. 722, Sept. Term, 1984.**

Court of Special Appeals of Maryland.

Feb. 15, 1985.

20

Harvey Greenberg, Baltimore, for appellants.

William F. Ryan, Jr., Baltimore (Whiteford, Taylor, Preston, Trimble & Johnston, Baltimore, on brief), for appellees.

Argued before WILNER, KARWACKI and ROBERT M. BELL, JJ.

WILNER, Judge.

On November 25, 1981, Norman and Catherine Stifler, on their own and without counsel, filed with the Health Claims Arbitration Office a malpractice claim against Dr. Seymour Weiner. The claim was based on radiotherapy treatment that Mr. Stifler had received from Dr. Weiner in early November, 1978. The treatment, directed at Mr. Stifler's upper lip, ended on or before November 20, 1978. Mr. Stifler claimed that his tongue was injured as a result of the treatment.

Although the full record of the Health Claims Arbitration Office is not included in the record before us, it appears that, as a result of the claim, an arbitration panel was chosen in accordance with Md.Code Ann.Cts. & Jud.Proc. art., § 3–2A–04. On January 18, 1982, Dr. Weiner served interrogatories on the Stiflers asking, among other things, when and how the injury occurred and what experts they intended to call as witnesses. In response, Mr. Stifler confirmed that the injury to his tongue had occurred during the treatment, that the treatment was completed by November 20, 1978, that the injury was apparent to Mr. Stifler at that time, and that he indeed complained to Dr. Weiner about the injury on that day. He further said that there were no expert witnesses that he intended to call.[1]

At some point, Dr. Weiner filed a motion for summary judgment (which is not in the record), together with an affidavit from him attesting that the treatment afforded Mr. Stifler "met the standard of care required of physicians for the kind of treatment and therapy involved in that such treatment and therapy conformed to the standard of skill and care ordinarily exercised by radiologists in cases of this kind and, therefore, was consistent with good and accepted

---

1. Mrs. Stifler apparently did not answer the interrogatories.

radiotherapeutic practice." Also accompanying the motion was a memorandum of law that is not in the record before us.

On October 7, 1982, the panel chairman, by himself, granted the motion and entered judgment for Dr. Weiner "for the reasons set forth in the Health Care Provider's Memorandum." It is not entirely clear just how that came about. According to Dr. Weiner's counsel, "Dr. Weiner came and spoke to the panel chairman and explained the situation." The other members of the panel were not present; whether the Stiflers were present is not clear from the record.

Within thirty days, still proceeding without counsel, the Stiflers filed in the Circuit Court for Baltimore City an action to nullify the arbitration award and a declaration that violated Cts. & Jud.Proc. art., § 3–2A–02(b) by stating a specific amount of damages sought. Dr. Weiner responded with a general issue plea and a special plea of limitations. He subsequently moved for summary judgment on the grounds that: (1) the court lacked subject matter jurisdiction "because the plaintiffs failed to present a case and arbitrate their claim before the Health Claims Arbitration Panel";[2] (2) the claim is barred by limitations; and (3) because the Stiflers had no expert witness, there is no legally sufficient evidence to show that Weiner was negligent. Attached to the motion was the deposition testimony of Mr. Stifler in which he again confirmed that he was aware of and had complained about the injury to his tongue on either November 17 or November 20, 1978, and an affidavit from Dr. Weiner similar to that filed in the arbitration proceeding.

At that point, the Stiflers employed counsel who, on May 1, 1984, moved to vacate the judgment of the panel on the

---

2. We cannot help but note the "Chutzpah" inherent in this defense. Dr. Weiner is the one who precluded the claim from being submitted to and decided by the panel by successfully urging the panel chairman to grant his motion for summary judgment.

ground that the claim had been disposed of by the unauthorized solitary act of the chairman. Three days later, the court granted Weiner's motion for summary judgment without reaching the issue raised in the Stiflers' last-minute motion. After a motion to reconsider that ruling was denied, judgment was entered and this appeal ensued. The Stiflers ask:

"1. Did the Circuit Court for Baltimore City have jurisdiction to entertain the Appellants' claim?

2. Did the Circuit Court for Baltimore City properly grant Appellees' Summary Judgment Motion?"

■ We shall affirm the judgment of the circuit court on the ground that, from the uncontradicted evidence, the Stiflers' claim was barred by limitations. Mr. Stifler underwent radiotherapy because of a problem with his upper lip. He did not expect any injury to his tongue, and, for purposes of this appeal, we shall assume that, in the normal course of the treatment, competently applied, no injury should have occurred. But the injury did occur and it was apparent to Mr. Stifler by November 20. He obviously knew that it resulted from the treatment, as he complained to Dr. Weiner about it. As his claim was not filed within three years of his discovery of the injury, it is barred. Md.Code Ann.Cts. & Jud.Proc. art., § 5–109; *Lutheran Hospital v. Levy,* 60 Md.App. 227, 482 A.2d 23 (1984).

, Because appellants' first question goes to the jurisdiction of the circuit court, and because we perceive in the context of that question an erroneous practice or assumption by the Health Claims Arbitration Office, we shall address it.

Appellants' attack on the court's jurisdiction is grounded upon the unwarranted action of the panel chairman in granting the motion for summary judgment in the arbitration proceeding. They argue: (1) the circuit court has no jurisdiction in a medical malpractice case involving more than $5,000 unless the claim has first been considered and adjudicated by an arbitration panel; (2) that means the whole panel, not just the chairman; (3) because of the

unauthorized granting of summary judgment by the panel chairman, the panel never considered and adjudicated the claim; (4) *ergo,* no jurisdiction. Dr. Weiner argues in response that the chairman *is* authorized to grant summary judgment by virtue of § 3–2A–05(c) of Cts. & Jud.Proc. art. That section states that "[t]he attorney member of the panel shall be chairman and he shall decide all prehearing procedures including issues relating to discovery."

■ We categorically reject Dr. Weiner's response and, with it, the practice of allowing the panel chairman, on his or her own, to dispose of a claim on summary judgment.

The health claims arbitration act was carefully crafted to provide a balanced decision-making tribunal. Unless, pursuant to § 3–2A–04(e), the parties agree on a single arbitrator, the panel must consist of three arbitrators: an attorney, a health care provider, and a member from the general public who is neither an attorney nor a health care provider. §§ 3–2A–03, 3–2A–04. Section 3–2A–05(a) mandates that "*[a]ll* issues of fact and law raised by the claim and response shall be referred by the Director *to the arbitration panel.*" (Emphasis added.) Section 3–2A–05(d) continues that "[t]he *arbitration panel* shall first determine the issue of liability with respect to a claim referred to it." (Emphasis added.) *See,* in general, *Attorney General v. Johnson,* 282 Md. 274, 385 A.2d 57, *appeal dismissed* 439 U.S. 805, 99 S.Ct. 60, 58 L.Ed.2d 97 (1978).

These provisions are clear beyond doubt. A claim submitted to arbitration is to be decided by the *panel,* not by the chairman. All issues of fact and law are to be referred to and decided by the panel. Section 3–2A–05(c), permitting the chairman to decide "prehearing procedures including issues relating to discovery" cannot sensibly be read to include the power to decide the claim itself. "Prehearing procedures" means basic housekeeping matters—scheduling, postponements, things of that kind—not the power to usurp the statutory responsibility of the panel.

Although there is no provision in the statute for summary disposition (*compare* Md.Rule 2–501), we see no reason why a claim cannot be adjudicated on that basis in those instances where it may be susceptible to such treatment. If, for example, as here, limitations has clearly run on the claim, there is no reason to waste time, effort, and money on a full-scale trial on the merits of the claim. But if a summary disposition is to be made, it must be made by the panel and not just one member of the panel. No doubt with all good intention (and apparently in accordance with an established practice of the Health Claims Arbitration Office),[3] the chairman inappropriately exercised an authority that was not his to exercise.

■ That does not, however, mean that the circuit court was without jurisdiction. The Court made clear in *Oxtoby v. McGowan*, 294 Md. 83, 91, 447 A.2d 860 (1982), that the Health Claims Arbitration Act did not withdraw subject matter jurisdiction from the circuit court. It merely created a condition precedent to the right of a party to invoke that jurisdiction and was thus "analogous to the doctrine of exhaustion of administrative remedies."

It would, at this stage of the proceeding, be silly to remand the case all the way to the panel so that it could perfunctorily do what, as a matter of law, must be done. The claim is not cognizable; it is barred by limitations; it cannot be adjudicated on its merits. In the interest of judicial economy, therefore, we shall simply affirm the judgment of the circuit court, for the reasons we have expressed.

---

**3.** In the record is a letter dated October 15, 1981, from the Director of the Office advising the chairman of another panel:

"It has been the policy of this office since its inception to follow generally the principle that a Panel Chairman here has the right to take such pre-trial actions (including ruling on all motions) as a trial judge would have if the matter were in a nisi prius court.

Consequently, it is our position that you do have a right—and a duty—to rule on a Motion for Summary Judgment."

**26**

JUDGMENT AFFIRMED; APPELLANTS TO PAY THE COSTS.