[Nos. B089703, B092934. Second Dist., Div. One. Dec. 5, 1995.]

GARY A. SCHLESSINGER, Plaintiff and Appellant, v.
ROSENFELD, MEYER & SUSMAN, Defendant and Respondent.

## COUNSEL

Gary A. Schlessinger, in pro. per., Schlessinger & Wheeler and David E. Wheeler for Plaintiff and Appellant.

Irell & Manella, Gregory R. Smith, Steven A. Marenberg and Jessica M. Weisel for Defendant and Respondent.

## OPINION

**MASTERSON, J.**—Gary Schlessinger, an attorney, and Rosenfeld, Meyer & Susman (RM&S), his former law firm, could not agree on the payment due Schlessinger upon his resignation from the partnership. Pursuant to the partnership agreement, the dispute proceeded to arbitration before the American Arbitration Association. The arbitrator disposed of the principal issues by way of two motions for summary adjudication and ultimately rendered an award in favor of RM&S.[1]

Schlessinger petitioned the superior court to vacate the arbitration award on the ground that the arbitrator had refused to hear evidence material to the controversy. In the petition, he asserted that the California Arbitration Act (Code Civ. Proc., §§ 1280-1294.2) precluded the use of summary adjudication motions in an arbitration proceeding. The trial court dismissed the petition. We conclude that the arbitrator could entertain such motions and affirm.

### BACKGROUND

Schlessinger was a partner at RM&S from January 1, 1966, through May 12, 1993, at which time he resigned from the partnership. In 1975, Schlessinger and other partners at RM&S had entered into a written partnership agreement (the agreement) governing their practice of law. The agreement provided that partners who left the firm were to be paid for their interest in the firm's anticipated revenues from work in progress and receivables (the "agreed sum") and for their capital account. The amount of the agreed sum was reduced in accordance with a specified formula if the departing partner engaged in competition with the firm.

After Schlessinger left RM&S, he began competing with the firm. RM&S calculated the agreed sum by making the specified reductions in Schlessinger's share of anticipated revenues. Schlessinger contended that the reductions constituted unlawful tolls on competition. When the parties could not resolve this dispute, RM&S filed a demand for arbitration with the American Arbitration Association (AAA) pursuant to article 13 of the

---

[1]We use the term "summary adjudication" motion to describe a motion in which a party seeks a ruling on an issue of law based on evidence submitted in written form (e.g., exhibits, declarations). Although not applicable to the arbitration proceeding here, Code of Civil Procedure section 437c, subdivision (f), describes this type of motion as used in California courts. Unlike a summary judgment motion, a motion for summary adjudication does not dispose of all legal issues in the case.

agreement.[2] Schlessinger responded with a counter-demand for arbitration. The parties retained counsel for purposes of the arbitration.

Under AAA rules,[3] the matter was assigned to Arbitrator Winslow Christian, a retired justice of the Court of Appeal. On November 18, 1993, the arbitrator held a preliminary hearing to determine the arbitration procedure.[4] After consultation with counsel and the consideration of written submissions, the arbitrator issued "procedural order number one," which stated in part, "The parties are invited, but not required, to present initial summary judgment motions, tendering any issues framed by the pleadings which, in the judgment of counsel, can be resolved on declarations." The order provided for a briefing schedule, with argument to be conducted by a telephone conference call.

The parties filed cross-motions for summary adjudication on the question of whether the agreement's tolls on competition were valid.[5] On December 13, 1993, the arbitrator conducted a telephonic hearing on the motions. The following day, he issued a three-page ruling denying Schlessinger's motion and granting RM&S's motion in part. The arbitrator noted that the parties had submitted declarations, memoranda of points and authorities, and other documents in support of their respective positions. He ruled that under *Howard* v. *Babcock* (1993) 6 Cal.4th 409 [25 Cal.Rptr.2d 80, 863 P.2d 150, 28 A.L.R.5th 811], "an agreement between law partners may lawfully exact from a withdrawing partner a *reasonable* toll for competing with his former law firm." (Italics added.) The arbitrator also found that the issue of the tolls' "reasonableness" could not be resolved on the basis of the motions and

---

[2]Article 13 stated in part that "[a]ny dispute arising under or connected with this Agreement shall be resolved by binding arbitration. The parties to the dispute shall endeavor to agree upon a procedure for arbitrating the dispute . . . and in the absence of such agreement, the rules of the American Arbitration Association shall be applied." Article 13 also provided that Code of Civil Procedure section 1283.05 would govern any arbitration, which had the effect of making civil discovery methods (Code Civ. Proc., §§ 2016-2036) available in the arbitration proceeding.

[3]The rules are entitled "Commercial Arbitration Rules," as amended and effective May 1, 1992. When we wish to refer to a specific AAA rule, we will preface the number of the rule with the word "Rule" (e.g., Rule 10).

[4]During the preliminary hearing, the arbitrator and RM&S's attorney stated that they wanted to utilize a summary judgment procedure. Schlessinger's counsel orally objected to the use of that procedure and requested that the arbitrator permit discovery and hold a plenary arbitration hearing. The arbitrator overruled Schlessinger's objection and urged both parties to bring motions for summary judgment.

[5]Schlessinger did not include these summary adjudication papers with his petition to vacate the arbitration award, so we cannot ascertain their precise content.

would have to await the taking of evidence. He concluded that the toll provisions of the agreement "are valid if they are reasonable."[6]

The parties then submitted proposals as to the further course of the proceedings. On December 22, 1993, the arbitrator conducted a telephone conference call with counsel on that subject. On January 3, 1994, he issued "procedural order number two," which stated in part: "In the interest of economy and expedition in the disposition of this proceeding, . . . the single issue of reasonableness of the 'toll' for competition . . . will be tried first. [¶] Pending further order, discovery will be limited to the reasonableness of the 'toll.' " With the scope of discovery so limited, the arbitrator established deadlines for the taking of depositions and for each party to serve and respond to one set of contention interrogatories and a document demand. He also set a deadline for any additional summary adjudication motions and, absent such a motion, scheduled a trial date.[7] Schlessinger deposed two RM&S partners, and RM&S took Schlessinger's deposition.

In February 1994, Schlessinger filed a motion for summary adjudication contending that the tolls were unreasonable as a matter of law. Shortly thereafter, RM&S filed a cross-motion on the same issue. In support of his motion and in opposition to RM&S's motion, Schlessinger submitted, among other things, memoranda of points and authorities and evidence consisting of two declarations from himself, a declaration from a certified public accountant, a declaration from his attorney, excerpts from the two depositions he had taken, and portions of his own deposition. The evidence supporting RM&S's motion consisted primarily of declarations from the two partners whom Schlessinger had deposed and of Schlessinger's deposition testimony.

On March 31, 1994, the arbitrator held a telephonic hearing on this second round of summary adjudication motions. In mid-April, he issued a three-page ruling, denying Schlessinger's motion and granting RM&S's motion.

---

[6]Because the arbitrator had overruled Schlessinger's objection to the use of dispositive motions and had encouraged both parties to file such motions (see fn. 4, *ante*), Schlessinger's participation in the motions process did not waive his right to challenge the use of summary adjudication motions in seeking to vacate the arbitration award. (See *Mary M.* v. *City of Los Angeles* (1991) 54 Cal.3d 202, 212-213 [285 Cal.Rptr. 99, 814 P.2d 1341] [no waiver where party "acquiesces" in trial court ruling after objection is overruled]; 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 304, pp. 315-316; *id.* (1995 pocket supp.) pp. 88-89.) In these circumstances, Schlessinger's participation in the motions process is considered a valid "defensive act." This is especially so since there were *cross-motions* for summary adjudication; Schlessinger had no realistic choice but to oppose RM&S's motion.

[7]In this opinion, we use the term "trial" in the same sense as the arbitrator, i.e., to describe an arbitral proceeding involving the appearance and oral testimony of witnesses.

The ruling quoted *Howard* v. *Babcock, supra,* 6 Cal.4th at page 425, for the proposition that "[t]hese tolls on competition are valid if 'at the time of the agreement [they were] reasonably calculated to compensate the firm for losses that may be caused by the withdrawing partner's competition.'" Applying this standard, the arbitrator reviewed the evidence submitted on the motions and concluded that the tolls were reasonable as a matter of law.

In light of the arbitrator's rulings on the two summary adjudication motions, the parties were able to resolve the remaining issues by stipulation.[8] In July 1994, the arbitrator issued an award in RM&S's favor which incorporated the summary adjudication rulings.

In November 1994, Schlessinger filed a petition in superior court to vacate the arbitration award. The petition asserted that the award was invalid because Schlessinger's "rights were substantially prejudiced . . . by the refusal of the arbitrator[] to hear evidence material to the controversy or by other conduct of the arbitrator[] contrary to the provisions of this [Act]." (Code Civ. Proc., § 1286.2, subd. (e).)[9] In particular, Schlessinger claimed that the California Arbitration Act (the Act) required the arbitrator to conduct a hearing at which witnesses appeared and presented live testimony, thus precluding the use of summary adjudication motions. The trial court dismissed the petition. Schlessinger filed a timely appeal.[10]

## DISCUSSION

The contention that the arbitrator lacked authority to entertain summary adjudication motions requires that we interpret provisions of the Act, the AAA rules, and the agreement. In construing statutory provisions, we follow well-established principles: "First, ' "the court should ascertain the intent of the Legislature so as to effectuate the purpose of the law" '. . . . Secondly, the provision must be given a reasonable and common sense interpretation consistent with the apparent purpose and intention of the lawmakers, practical rather than technical in nature, which upon application will result in wise policy rather than mischief or absurdity. . . . ' "The court should take into account matters such as context, the object in view, the evils to be remedied, the history of the times and of legislation upon the same subject, public policy, and contemporaneous construction. . . ." ' " (*DeYoung* v. *City*

---

[8]The principal outstanding issue was whether RM&S owed any more payments to Schlessinger under the agreement. Based on the summary adjudication rulings, the parties stipulated that Schlessinger had been paid in full.

[9]All further statutory references are to the Code of Civil Procedure.

[10]We review the trial court's decision de novo. (*Advanced Micro Devices, Inc.* v. *Intel Corp.* (1994) 9 Cal.4th 362, 376, fn. 9 [36 Cal.Rptr.2d 581, 885 P.2d 994].)

*of San Diego* (1983) 147 Cal.App.3d 11, 17-18 [194 Cal.Rptr. 722], citations omitted.) To determine intent, we first look to the statutory language, giving effect to its plain meaning. (*Burden* v. *Snowden* (1992) 2 Cal.4th 556, 562 [7 Cal.Rptr.2d 531, 828 P.2d 672].) We also resort to the plain meaning of the language in the agreement and the AAA rules. (See *Waller* v. *Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 18 [44 Cal.Rptr.2d 370, 900 P.2d 619]; *Bay Development Ltd.* v. *Superior Court* (1990) 50 Cal.3d 1012, 1037 [269 Cal.Rptr. 720, 791 P.2d 290] (conc. opn. of Lucas, C. J.).)

Neither the agreement, the Act, nor the AAA rules incorporate the state's summary adjudication statute (§ 437c). Nor do any of those sources expressly provide for such a motion. However, the lack of explicit authorization does not mean summary adjudication motions are precluded. ▮▮▮ While an authorizing statute may be necessary to permit summary adjudication motions in an action at law, the "rules of judicial procedure need not be observed [in an arbitration]." (§ 1282.2, subd. (d).) We conclude that the arbitrator had implicit authority to rule on such motions. We begin by examining the statutes on which Schlessinger relied in seeking to vacate the award.

## A.   *The Statutory Basis of Schlessinger's Petition*

▮▮▮ An arbitration award must be vacated if the rights of a party were substantially prejudiced by the arbitrator's "refusal . . . to *hear* evidence material to the controversy." (§ 1286.2, subd. (e), italics added.) Schlessinger contends that the arbitrator did not "hear" any evidence because he disposed of the principal issues by way of summary adjudication motions. According to Schlessinger, an arbitrator "hears" evidence only if he learns of it through his auditory sense; thus, the evidence had to be presented orally through witnesses.

An award must also be set aside if the arbitrator engaged in prejudicial conduct contrary to any of the Act's provisions. (§ 1286.2, subd. (e).) Schlessinger asserts that one provision of the Act required a hearing at which he could cross-examine witnesses. (See § 1282.2, subd. (d).) He claims that the arbitrator violated this provision because the summary adjudication motions deprived him of the right of cross-examination. We disagree with these contentions.[11]

---

[11]RM&S argues that AAA rules preclude Schlessinger's statutory challenge to the arbitration award. Specifically, Rule 38 provides that "[a]ny party who proceeds with the arbitration after knowledge that any provision or requirement of *these rules* has not been complied with

## B. *The Arbitrator's Duty to "Hear" the Evidence*

■ Under section 1286.2, subdivision (e), the arbitrator's obligation "to hear evidence" does not mean that the evidence must be orally presented or that live testimony is required. "Legally speaking the admission of evidence is to hear it." (*Gonzales* v. *Interinsurance Exchange* (1978) 84 Cal.App.3d 58, 63 [148 Cal.Rptr. 282].) An arbitrator "hears" evidence by providing a "legal hearing," that is, by affording an "opportunity to . . . present one's side of a case." (Webster's Third New Internat. Dict. (1981) p. 1044, col. 2 [defining "hear" and "hearing"].) An arbitrator also "hears" a matter by "consider[ing] a motion upon presentation thereof by counsel." (Ballentine's Law Dict. (3d ed. 1969) p. 552, col. 2.) Thus, a "hearing" does not necessarily include "an opportunity to present live testimony or be subject to cross examination." (*Buxton* v. *Lynaugh* (5th Cir. 1989) 879 F.2d 140, 145, cert. den. 497 U.S. 1031 [111 L.Ed.2d 803, 110 S.Ct. 3295].) "Unless required by the express language, or the context of the particular rule, the use of the word 'hearing' does not necessarily contemplate either a personal appearance or an oral presentation to the court." (*Classic Promotions, Inc.* v. *Shafer* (Tex.App. 1993) 846 S.W.2d 948, 950.)

We decline to read section 1286.2, subdivision (e), as requiring that an arbitrator always resolve disputes through the oral presentation of evidence or the taking of live testimony. To do otherwise would lead to anomalous results. The purpose of arbitration, as reflected in the Act, is to provide a "speedy and relatively inexpensive means of dispute resolution." (*Moncharsh* v. *Heily & Blase* (1992) 3 Cal.4th 1, 9 [10 Cal.Rptr.2d 183, 832 P.2d 899].) Having chosen arbitration over civil litigation, a party should "reap the advantages that flow from the use of that nontechnical, *summary procedure.*" (*Id.* at p. 11, italics added.)

Yet, Schlessinger's position would require full-blown trials even where, as here, one of the parties believes that no material facts are in dispute. In a case where a legal issue or defense could possibly be resolved on undisputed facts, the purpose of the arbitration process would be defeated by precluding a summary judgment or summary adjudication motion and instead requiring a lengthy trial. (See Dee, *Use of Alternative Dispute Resolution (ADR) in Resolving Employer-Employee Disputes*, in Dispute Resolution Alternatives

---

and who fails to state an objection in writing shall be deemed to have waived the right to object." (Italics added.) Schlessinger admittedly did not make a *written* objection to the use of summary adjudication motions. (See fn. 4, *ante*.) However, his attack on the arbitration award is based on the Act, not the AAA rules. Because Rule 38 is expressly limited to violations of AAA rules, it does not bar Schlessinger's claim that the award is invalid under section 1286.2, subdivision (e).

Supercourse (PLI, 1993) 377, 388-389 [inapplicability of summary judgment in arbitral arena may cause arbitration proceeding to last longer and be more expensive than civil litigation].)[12] Moreover, taking Schlessinger's argument to its logical extreme, an arbitrator could not consider any documentary evidence, with or without a trial, unless one of the parties first read it to him. The Act certainly does not countenance such a wasteful use of the parties' resources and the arbitrator's time.[13]

## C. *Schlessinger's Alleged Right to Cross-examine Witnesses*

■ We reject Schlessinger's argument that section 1282.2, subdivision (d), mandated a hearing at which witnesses presented live testimony and were subject to cross-examination.[14] While that portion of the Act entitles a party to cross-examine witnesses *if* they appear at a hearing, it does not give a party an absolute right to present oral testimony in every case. Indeed, section 1282.2, subdivision (c), states that the arbitrator "shall rule on . . . questions of hearing procedure and shall exercise all powers relating to the conduct of the hearing." This language is sufficiently broad to permit an arbitrator to conduct a hearing on a summary adjudication motion in lieu of a hearing with oral testimony.

Equally important, all of the provisions of section 1282.2 are prefaced with the words "[u]nless the arbitration agreement otherwise provides." Thus, even if section 1282.2, subdivision (d), mandates a hearing with live testimony, the introductory language of the statute permits the parties to adopt a different procedure. They did so here. The partnership agreement required application of AAA rules to the parties' arbitration. Consistent with Rule 10, the arbitrator held a "preliminary hearing" at which he was authorized to "specify the issues to be resolved, to [have the parties] stipulate to

---

[12]Schlessinger's interpretation of the Act would also appear to make it improper for arbitrators to ever consider the arbitral equivalent of *in limine* motions, motions to dismiss for failure to state a claim, and motions for nonsuit or directed verdict. The gist of his argument seems to be that arbitrators must always hear any proffered testimony from a "live" witness. On the contrary, under the Act, arbitrators possess considerable discretion in deciding what testimony to hear. (See § 1282.2, subds. (c), (d) [arbitrator "shall rule on the admission and exclusion of evidence . . . but rules of evidence . . . need not be observed"].)

[13]According to Schlessinger, the arbitrator in this case initially expressed some reluctance to grant summary adjudication, precisely because of his concern that section 1286.2, subdivision (e), might require him to hear the evidence by way of oral testimony. Obviously, the arbitrator overcame his initial concerns. We agree with his ultimate interpretation of the statute.

[14]That statute provides: "The parties to the arbitration are entitled to be heard, to present evidence and to cross-examine witnesses *appearing at the hearing* . . . ." (§ 1282.2, subd. (d), italics added.)

uncontested facts, and *to consider any other matters that will expedite the arbitration proceedings.*" (Rule 10, italics added.) Further, while Rule 29 describes the method for conducting a "hearing," including the questioning of witnesses, it also provides that "[t]he arbitrator has the discretion to vary this procedure." Significantly, Rule 32 permits the arbitrator to "receive and consider the evidence of witnesses by affidavit." We believe that these rules implicitly sanctioned the use of summary adjudication motions.[15]

Finally, Schlessinger's position, if correct, would exalt form over substance. Where, through discovery, the parties have pretrial access to pertinent witnesses and information, a summary adjudication motion may provide an efficient means of evaluating the same evidence that would otherwise be presented at a more time-consuming trial. Had the summary adjudication motions not been made, RM&S could have presented its case at trial by calling two of its partners as witnesses (the ones who executed the declarations) and by reading from Schlessinger's deposition transcript. Schlessinger could have cross-examined the RM&S witnesses (whom he had already deposed) and could have taken the stand himself. At the close of the testimony, the arbitrator would have decided that RM&S's evidence alone was sufficient, that Schlessinger's evidence was irrelevant or cumulative, that no material facts were in dispute, and that RM&S was entitled to prevail. In other words, the inefficient use of a trial would have accomplished the same result as a summary adjudication motion. Neither the Act nor the AAA rules require a trial in such circumstances.

## D.  *Non-California Authorities*

While no California case has addressed the issue before us, other authorities shed some light on the question. For instance, a number of decisions by arbitrators indicate that they occasionally consider motions for summary judgment. (See, e.g., Eastern Air Lines, Inc., 79 Lab. Arb. Rep. (BNA 1982) 61, 64, fn. 3 ["a summary judgment is extraordinary (although not unheard of) in arbitration proceedings"]; Pantsmaker, Inc., 83 Lab. Arb. Rep. 753, 759 (BNA 1984) [considering and denying union's motion for summary

---

[15]In his reply brief, Schlessinger disavows any contention that the AAA rules precluded the use of summary adjudication motions. (See fn. 11, *ante.*) We note, however, that under Rule 37, "[t]he parties may provide, by written agreement, for the waiver of oral hearings in any case." Although the parties in this case did not waive "oral hearings" through a written agreement, Rule 37 did not foreclose the use of summary adjudication motions. That rule simply provides a means for the parties to avoid an "oral hearing" where they can so agree. Even without the parties' agreement, however, the arbitrator retains the discretion (under Rule 29) to vary the arbitration procedure, e.g., to hear the evidence by way of motions.

judgment]; City of Pasadena, 96 Lab. Arb. Rep. 26, 29 (BNA 1990) [denying grievant's summary judgment motion and ordering trial on the merits].)[16]

Commentators, on the other hand, generally assume or conclude that such motions are not available in an arbitration proceeding. (See, e.g., Mathiason & Uppal, *Evaluating and Using Employer-Initiated Arbitration Policies and Agreements: Preparing the Workplace for the Twenty-First Century*, in Employment Discrimination and Civil Rights Actions in Federal and State Courts (ALI-ABA 1994) 875, 919 [noting that California Arbitration Act does not provide for motion practice]; Knight et al., Cal. Practice Guide: Alternative Dispute Resolution (The Rutter Group 1994) ¶ 4.4, pp. 4-1 to 4-2 [mentioning unavailability of summary judgment motions as a disadvantage of contractual arbitration proceedings].) But none of these secondary authorities has considered whether the Act, in conjunction with AAA rules, permits the use of summary judgment or summary adjudication motions.

As to judicial decisions, Schlessinger urges us to follow *White* v. *Preferred Research, Inc.* (S.C.Ct.App. 1993) 432 S.E.2d 506 (hereafter *White*). In that case, the respondents in an arbitration proceeding moved for summary judgment pursuant to rule 56 of the South Carolina Rules of Civil Procedure. Their motion was denied by the arbitrator, and an award was rendered against them. The claimant successfully requested that the trial court confirm the award. On appeal, the respondents challenged the arbitrator's failure to grant the summary judgment motion. The court rejected that attack, stating: "Arbitration is not a judicial proceeding governed by the rules of civil procedure. . . . Thus, the Rule 56 motion was not proper." (432 S.E.2d at p. 507, fn. 2.)

We read *White* as recognizing the general proposition that rules of civil procedure typically do not apply in arbitration proceedings—a conclusion with which we agree. For instance, as stated, Code of Civil Procedure section 437c, the summary adjudication statute, did not apply to the arbitration here. However, to the extent *White* stands for the notion that summary judgment is never appropriate in an arbitration, it does not provide a correct interpretation of the California Arbitration Act and the AAA rules.

More in line with our thinking is *Stifler* v. *Weiner* (1985) 62 Md.App. 19 [488 A.2d 192], certiorari denied 304 Md. 96 [497 A.2d 819], which concerned whether a motion for "summary disposition" is available under

---

[16]See also *Xebec Development Partners, Ltd.* v. *National Union Fire Ins. Co.* (1993) 12 Cal.App.4th 501, 518 [15 Cal.Rptr.2d 726] (in discussing procedural history of case, court notes that arbitrators had denied summary judgment).

Maryland's Health Claims Arbitration Act (Md. Code Ann., Cts. & Jud. Proc., § 3-2A-01 et seq.). In concluding that such a motion is permissible, the court reasoned: "Although there is no provision in the statute for summary disposition . . . , we see no reason why a claim cannot be adjudicated on that basis in those instances where it may be susceptible to such treatment. If, for example, as here, limitations has clearly run on the claim, there is no reason to waste time, effort, and money on a full-scale trial on the merits of the claim." (62 Md.App. at p. 24 [488 A.2d at p. 195].)

In sum, we conclude that the arbitrator had authority under the Act and AAA rules to entertain the parties' cross-motions for summary adjudication.

E. *Judicial Review of the Arbitrator's Decision*

Having concluded that the arbitrator could rule on summary adjudication motions, we next decide whether the arbitration award should be vacated based on his rulings.

■ In general, ". . . courts may not interfere with arbitration awards. Courts may not examine the merits of the controversy, the sufficiency of the evidence supporting the award, or the reasoning supporting the decision. . . . A court may not set aside an arbitration award even if the arbitrator made an error in law or fact. . . ." (*Santa Clara-San Benito etc. Elec. Contractors' Assn.* v. *Local Union No. 332* (1974) 40 Cal.App.3d 431, 437 [114 Cal.Rptr. 909], citations omitted.) As explained more recently by our Supreme Court: "[I]t is the general rule that, with narrow exceptions, an arbitrator's decision cannot be reviewed for errors of fact or law. In reaffirming this general rule, we recognize there is a risk that the arbitrator will make a mistake. That risk, however, is acceptable for two reasons. First, by voluntarily submitting to arbitration, the parties have agreed to bear that risk in return for a quick, inexpensive, and conclusive resolution of their dispute. . . . [¶] . . . [¶] A second reason why we tolerate the risk of an erroneous decision is because the Legislature has reduced the risk to the parties of such a decision by providing for judicial review in circumstances involving serious problems with the award itself, or with the fairness of the arbitration process." (*Moncharsh* v. *Heily & Blase, supra,* 3 Cal.4th at pp. 11-12 (hereafter *Moncharsh*).)

*Moncharsh*'s reference to the narrow, statutory exceptions permitting judicial review of arbitration awards brings us back to section 1286.2, subdivision (e). As our earlier discussion indicates, the arbitrator did not "refuse to hear evidence" or otherwise contravene the Act merely because he entertained motions for summary adjudication. However, our conclusion that

the arbitrator had the authority to rule on such motions does not end the inquiry. Section 1286.2, subdivision (e), ensures that a party is not "unfairly deprived of a fair opportunity to present his or her side of the dispute." (*Moncharsh, supra,* 3 Cal.4th at p. 13.) ■■ Here, Schlessinger argues that the arbitrator committed two principal errors in granting the summary adjudication motions: he found that there were no disputed issues of material fact, and he precluded Schlessinger from offering certain material evidence in opposition to the motions.

As to the first alleged error, *Moncharsh* makes clear that we cannot examine the arbitration award for errors of fact or law. (See 3 Cal.4th at pp. 11-12.) Indeed, "the existence of an error of law apparent on the face of the award that causes substantial injustice does not provide grounds for judicial review." (*Id.* at p. 33.) Thus, even if the arbitrator erred in concluding that there were no disputed issues of material fact, the trial court properly refused to vacate the award on that basis.

Schlessinger's second contention—that the arbitrator did not permit him to offer material evidence—could be made in virtually every case where the arbitrator has excluded some evidence or placed limitations on discovery. Further, such a challenge would be available regardless of how the case was decided—by motion or trial. Plainly, this type of attack on the arbitrator's decision, if not properly limited, could swallow the rule that arbitration awards are generally not reviewable on the merits. Accordingly, a challenge to an arbitrator's evidentiary rulings or limitations on discovery should not provide a basis for vacating an award unless the error *substantially preju-diced* a party's ability to present *material* evidence in support of its case. (§ 1286.2, subd. (e).)

■■ As more fully explained by one Court of Appeal: "In the typical arbitration, an arbitrator must make numerous decisions about admission of evidence and in doing so may exclude material evidence. No doubt there will often be aggrieved parties who believe they have been 'substantially preju-diced.' Decisions about materiality cannot be made without familiarity with the issues and evidence in the arbitration. If the superior court must, with or without a transcript of the arbitration, routinely review the arbitrator's decision on materiality before reaching the question of substantial prejudice, the legislative goal of arbitral finality will be unattainable. Instead of saving time and money, the arbitration will be supplemented by lengthy and costly judicial second-guessing of the arbitrator. [¶] . . . [¶] We do not accept the suggestion . . . that section 1286.2, subdivision (e), provides a back door to *Moncharsh* through which parties may routinely test the validity of legal

theories of arbitrators. Instead, we interpret section 1286.2, subdivision (e), as a safety valve in private arbitration that permits a court to intercede *when an arbitrator has prevented a party from fairly presenting its case.* . . . Where, as here, a party complains of excluded material evidence, the reviewing court should generally focus first on prejudice, not materiality. To find substantial prejudice the court must accept, for purposes of analysis, the arbitrator's legal theory and conclude that the arbitrator might well have made a different award had the evidence been allowed." (*Hall* v. *Superior Court* (1993) 18 Cal.App.4th 427, 438-439 [22 Cal.Rptr.2d 376], italics added.)

In this case, we have no trouble concluding that Schlessinger was permitted to fairly present his side of the dispute. On the first round of cross-motions for summary adjudication, the parties filed declarations and memoranda of points and authorities concerning whether the tolls on competition were valid. In partially granting RM&S's motion, the arbitrator simply held that the tolls were valid *if* they were reasonable. This ruling was based on *Howard* v. *Babcock, supra,* 6 Cal.4th 409, in which the high court made the same determination based on the face of the contract before it. (*Id.* at pp. 419, 425-426.) Thus, the arbitrator's first ruling addressed a pure question of law that could be resolved on the basis of the agreement alone. Schlessinger therefore suffered no prejudice from the fact that the first summary adjudication ruling was made before the parties commenced discovery.

As to the second round of cross-motions, the arbitrator permitted the parties to engage in discovery before they sought to summarily adjudicate the issue of the tolls' reasonableness. In connection with these motions, Schlessinger submitted considerable evidence from several sources. RM&S's motion was based on Schlessinger's deposition testimony and the declarations of two of its partners, both of whom Schlessinger had deposed. Given the legal theory used by the arbitrator, as established in *Howard* v. *Babcock, supra,* 6 Cal.4th 409, we cannot say that a different result might have been reached had Schlessinger been allowed to conduct additional discovery. Even if Schlessinger had engaged in further discovery, we do not believe he would have uncovered any new *material* evidence. Accordingly, we find that Schlessinger was not precluded from offering any material evidence and that he had a fair opportunity to present his case.

In closing, we caution that our holding should not be taken as an endorsement of motions for summary judgment or summary adjudication in the

arbitration context. By concluding that, under the Act and AAA rules, the arbitrator was permitted to entertain summary adjudication motions, we do not suggest that he was required to do so. ▮ Further, in any given arbitration, the propriety of summary adjudication motions will depend upon a variety of factors, including the nature of the claims and defenses, the provisions of the arbitration agreement, the rules governing the arbitration, the availability of discovery, and the opportunity to conduct adequate discovery before making or opposing a motion. Finally, especially where the arbitration lacks an explicit procedure for dispositive motions, courts must ensure (consistent with *Moncharsh, supra,* 3 Cal.4th at pp. 12-13, and *Hall* v. *Superior Court, supra,* 18 Cal.App.4th at pp. 438-439) that the party opposing such a motion is afforded a fair opportunity to present its position.

## DISPOSITION

The order dismissing the petition to vacate the arbitration award is affirmed.

Spencer, P. J., and Vogel (Miriam A.), J., concurred.