Filed 1/17/24  1600 Barberry Lane 8 v. Mikles CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| 1600 BARBERRY LANE 8, LLC et al., Plaintiffs and Appellants, v. TODD A. MIKLES et al., Defendants and Respondents. | D081775 (Super. Ct. No. 37-2016-00019030-CU-BT-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Ronald F. Frazier, Judge.  Affirmed.

Catanzarite Law Corporation, Kenneth J. Catanzarite, and Tim James O'Keefe for Plaintiffs and Appellants.

Thomas E. Walling for Defendants and Respondents.

Plaintiffs 1600 Barberry Lane 8, LLC and 1600 Barberry Lane 9, LLC invested in real property managed by defendants Todd A. Mikles, Daymark Residential Management, Inc., Daymark Properties Realty, Inc., and Sovereign Capital Management Group, Inc. (SCMG).  The plaintiffs brought a putative class action against the defendants in San Diego Superior Court,

asserting claims for breach of fiduciary duty, fraud, and breach of contract. After the lawsuit was filed, the parties stipulated to arbitrate the dispute. The arbitrator dismissed the claims and awarded the defendants their attorney's fees and costs. Thereafter, the dismissal and attorney fee award were confirmed by the trial court, and judgment was entered in favor of the defendants.

On appeal from the judgment, the plaintiffs assert the trial court erred by granting the defendants' petition to confirm the arbitration award for several reasons. They contend the arbitrator exceeded his authority by denying them leave to amend their claims. With respect to the attorney's fees awarded, the plaintiffs contend the arbitrator exceeded his authority by awarding fees for services rendered by an out-of-state lawyer and for fees unrelated to the arbitration. In addition, the plaintiffs argue that because SCMG's corporate powers were suspended at the time of the arbitration decision, the arbitrator's decision was voidable as to that entity. As we shall explain, we reject each of these arguments and affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

In 2008, the plaintiffs acquired investment interests in a residential apartment complex located in a suburb of Atlanta. The investments, as well as other similar investments throughout the country, were promoted by Grubb & Ellis Company (GEC), which required investors in the properties to execute a Property Management Agreement (PMA) and a Tenant in Common Agreement (TICA). The properties were managed by Daymark Residential Management, Inc. (Daymark), which at the time was an affiliate of GEC.

According to the plaintiffs' complaint, in 2011, GEC sold Daymark to Mikles. The following year, Mikles caused Daymark to hire Cottonwood Residential O.P., L.P. (Cottonwood) to manage its portfolio of residential

2

properties, including the Atlanta apartment complex in which the plaintiffs invested. The plaintiffs allege Cottonwood paid Daymark and Mikles $8 million, which they contend was a kickback, and that the terms of the PMAs and TICAs allowed Cottonwood to collect fees and commissions in excess of market rates.

The plaintiffs initially filed the underlying lawsuit in June 2016, alleging the transaction between Cottonwood and Daymark was not adequately disclosed to investors and that the defendants breached fiduciary duties they owed to the investors. In July 2017, the trial court entered a stipulation and order to arbitrate the plaintiffs' claims in accordance with the arbitration provision in the PMA. That provision states:

> "Binding Arbitration. Any dispute, claim or controversy arising out of or related to this Agreement, the breach hereof, the termination, enforcement, interpretation or validity hereof, including the determination of the scope or applicability of this Agreement to arbitrate, shall be determined by arbitration in Orange County, California, in accordance with the rules of The American Arbitration Association, and judgment entered upon the award rendered may be enforced by appropriate judicial action pursuant to the California Code of Civil Procedures. The arbitration panel shall consist of one (1) member, which shall be the mediator if mediation has occurred or shall be a person agreed to by each party to the dispute within thirty (30) days following notice by one party that he desires that a matter be arbitrated. If there was no mediation and the parties are unable within such thirty (30) day period to agree upon an arbitrator, then the panel shall be one (1) arbitrator selected by the Orange County office of the American Arbitration Association which arbitrator shall be experienced in the area of real estate and who shall be knowledgeable with respect to the subject matter area of the dispute. The losing party shall bear any fees and expenses of the arbitrator, other tribunal fees and expenses, reasonable attorney's fees of both parties, any costs of producing witnesses and any other reasonable costs and expenses incurred by him or the prevailing party or such costs shall be allocated by the

arbitrator. The arbitration panel shall render a decision within thirty (30) days following the close of presentation by the parties of their cases and any rebuttal. The parties shall agree within thirty (30) days following selection of the arbitrator to any prehearing procedures or further procedures necessary for the arbitration to proceed, including interrogatories or other discovery.

BY EXECUTING THIS AGREEMENT YOU ARE AGREEING TO HAVE CERTAIN DISPUTES DECIDED BY NEUTRAL ARBITRATION AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE SUCH DISPUTES LITIGATED IN A COURT OR JURY TRIAL. BY EXECUTING THIS AGREEMENT YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY."

After the trial court entered the stipulation to arbitrate, in August 2017, plaintiffs filed a demand to arbitrate and statement of claims with the American Arbitration Association (AAA) to decide the claims in their civil complaint. After an arbitrator was appointed, the defendants requested the opportunity to file a dispositive motion. The arbitrator granted the request and also provided the plaintiffs with the opportunity to amend their claim. Thereafter, in December 2018, the defendants submitted a motion to dismiss the plaintiffs' amended statement of claims in accordance with the arbitrator's ruling.

The arbitration was then stayed after defendants Daymark Residential Management, Inc. and Daymark Properties Realty, Inc. filed for bankruptcy. The proceedings resumed in 2021 after the finalization of a settlement agreement in the bankruptcy proceeding. Once the arbitration resumed, the parties submitted several additional briefs in support of their positions. In

their briefing, the defendants raised the issue of collateral estoppel based on an intervening decision of the Utah state court in a case brought by the plaintiffs against Cottonwood while the arbitration was stayed.[1]  The arbitrator then allowed the plaintiffs to address the issue in additional supplemental briefing.  In that brief, the plaintiffs asked the arbitrator to allow an additional amendment to their claim.

On February 9, 2022, the arbitrator issued an order dismissing the plaintiffs' claims.  As an initial matter, the arbitrator found that under the PMA's terms, the dispute was governed by the "internal laws of the State where the Property is located," which was Georgia.  The arbitrator also found that under the PMA's arbitration and venue provisions, "the arbitration itself is procedurally governed by the rules of the American Arbitration Association."[2]

With respect to the merits of the claims, the arbitrator found that the Utah court's decision that Cottonwood owed no fiduciary duty to the investors to charge fees at or below market rates or to disclose whether the fees they charged were above market rates was both correct and also barred the plaintiffs' claims under the doctrine of collateral estoppel.  The arbitrator also concluded that the failure to disclose the payment by Cottonwood to Daymark to assume the management of the properties was not fraudulent.  Thus, the

---

[1]     The trial court dismissed Cottonwood for lack of jurisdiction in this case before the parties stipulated to arbitrate the dispute.

[2]     The agreement's governing law and venue provision states:  "This Agreement shall be governed by and construed in accordance with the internal laws of the State where the Property is located without regard to any choice of law rules.  Any action relating to or arising out of this Agreement shall be subject to binding arbitration in Orange County, California, as provided in Section 13.15."

5

arbitrator dismissed the fraud claim without leave to amend on grounds that "it [did] not state facts sufficient to constitute a cause of action." Finally, the arbitrator concluded the breach of contract claim was properly dismissed in the Utah case because the plaintiffs had failed to state a claim for breach of contract, and was thus barred in the present action by the doctrine of collateral estoppel.

Thereafter, the defendants filed a motion for attorney's fees and costs, with supporting documentation for their request. The plaintiffs opposed the request, arguing (1) all of the fees requested were excessive and that the defendants had not shown the fees were actually paid, (2) the attorney's fees incurred to defend claims in the separate bankruptcy proceeding were not recoverable under the arbitration agreement, and (3) the defendants were not entitled to fees for the services of an attorney, Robert Sparks, who was not licensed to practice law in California. The arbitrator agreed with plaintiffs that the arbitration provision did not encompass attorney's fees incurred in connection with the bankruptcy proceeding and reduced the fee award accordingly. The arbitrator rejected the plaintiffs' other arguments. The arbitrator awarded defendants $258,136 in attorney's fees, $64,200 for Spark's consultation services, and costs of arbitration of $21,250.

The parties then filed competing petitions in the Superior Court on the arbitration award. The plaintiffs sought to vacate the award, or in the alternative to correct the award to exclude fees awarded for Sparks's services and attorney's fees not related to the arbitration. The plaintiffs argued the arbitration award was voidable as to SCMG because it had forfeited its corporate status and thus lacked capacity to contract. They also argued that the arbitrator exceeded its authority under Code of Civil Procedure

6

section 1286.2, subdivision (a)(4)[3] by not allowing plaintiffs to amend their claim, awarding fees for Sparks's services, and by not excluding fees that did not arise from the arbitration. The defendants filed a petition to confirm the arbitration award, as well as a response to the plaintiffs' petition. In their response, the defendants argued the plaintiffs had provided no valid grounds to vacate the arbitrator's decisions.

After a hearing on the competing petitions, the trial court denied the plaintiffs' petition to vacate or modify the arbitration award, rejecting each of the plaintiffs' arguments and continuing the hearing to consider the defendants' petition to confirm the arbitration award. After the additional hearing, the court granted the petition to confirm and directed the defendants to prepare a judgment for entry. The court entered judgment in favor of the defendants and plaintiffs timely appealed.

DISCUSSION

On appeal, the plaintiffs make the same arguments that were rejected by the trial court. The plaintiffs argue that the arbitrator exceeded its powers in three ways: by not allowing them to amend their claims, by awarding fees for Sparks's services, and by including fees that were not related to the arbitration. The defendants respond that these arguments lack merit because none satisfy the narrow requirements that would allow a court to upset the parties' arbitration agreement.

The plaintiffs also contend the trial court erred by failing to void the arbitration award as to SCMG based on their assertion that the company's corporate powers were suspended by the California Secretary of State at the time the award was confirmed. In response, the defendants argue the

_____

[3] Subsequent undesignated statutory references are to the Code of Civil Procedure.

7

plaintiffs waived this argument by failing to raise it in the arbitration proceeding, and that the trial court correctly found that the plaintiffs had failed to satisfy the requirements of the Revenue and Taxation Code sections on which they base their argument.

I

*Legal Standards*

"The parties in this case submitted their dispute to an arbitrator pursuant to their written agreement.  This case thus involves private, or nonjudicial, arbitration." (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 8 (*Moncharsh*).)  "In cases involving private arbitration, '[t]he scope of arbitration is ... a matter of agreement between the parties' [citation], and ' "[t]he powers of an arbitrator are limited and circumscribed by the agreement or stipulation of submission." ' " (*Ibid*.)  "Title 9 of the Code of Civil Procedure, as enacted and periodically amended by the Legislature, represents a comprehensive statutory scheme regulating private arbitration in this state.  (§ 1280 et seq.)  Through this detailed statutory scheme, the Legislature has expressed a 'strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution.' " (*Moncharsh,* at p. 9.)

"Consequently, courts will ' "indulge every intendment to give effect to such proceedings." ' [Citations.]  Indeed, more than 70 years ago [the California Supreme Court] explained:  'The policy of the law in recognizing arbitration agreements and in providing by statute for their enforcement is to encourage persons who wish to avoid delays incident to a civil action to obtain an adjustment of their differences by a tribunal of their own choosing.' (*Utah Const. Co. v. Western Pac. Ry. Co.* (1916) 174 Cal. 156, 159.)  'Typically, those who enter into arbitration agreements expect that their dispute will be

resolved without necessity for any contact with the courts.' " (*Moncharsh, supra*, 3 Cal.4th at p. 9.)

Because of the strong public policy in favor of arbitration, "arbitration awards are generally subject to extremely narrow judicial review. Courts will not review the merits of the controversy, the validity of the arbitrator's reasoning or the sufficiency of the evidence supporting the arbitrator's award." (*Hoso Foods, Inc. v. Columbus Club, Inc.* (2010) 190 Cal.App.4th 881, 887 (*Hoso*).) "The arbitrator's decision should be the end, not the beginning, of the dispute. [Citation.] Expanding the availability of judicial review of such decisions 'would tend to deprive the parties to the arbitration agreement of the very advantages the process is intended to produce.' " (*Moncharsh, supra*, 3 Cal.4th at p. 10.)

" 'When parties contract to resolve their disputes by private arbitration, their agreement ordinarily contemplates that the arbitrator will have the power to decide any question of contract interpretation, historical fact or general law necessary, in the arbitrator's understanding of the case, to reach a decision. [Citations.] Inherent in that power is the possibility the arbitrator may err in deciding some aspect of the case. Arbitrators do not ordinarily exceed their contractually created powers simply by reaching an erroneous conclusion on a contested issue of law or fact, and arbitral awards may not ordinarily be vacated because of such error, for " '[t]he arbitrator's resolution of these issues is what the parties bargained for in the arbitration agreement.' " ' " (*Hoso, supra*, 190 Cal.App.4th at p. 887.) "Moreover, consistent with the fundamental nature of the arbitration process, arbitrators may apply both legal and equitable principles and, unless specifically required to act in conformity with the rules of law, may act contrary to

9

substantive law and base their decisions upon broad principles of justice and equity." (*Ibid.*)

"Consistent with this limited role, a court may vacate an arbitral award only on certain statutorily enumerated grounds. [Citation.] These are laid out in the Code of Civil Procedure, and reflect not error in the merits of the decision, but ' "circumstances involving serious problems with the award itself, or with the fairness of the arbitration process." ' [Citation.] The situations in which the code provides a basis for vacatur include when: (1) the award fails to fully 'determin[e] … all the questions submitted to the arbitrators[,] the decision of which is necessary in order to determine the controversy' (§ 1283.4; see *M. B. Zaninovich, Inc. v. Teamster Farmworker Local Union 946* (1978) 86 Cal.App.3d 410, 415); (2) '[t]he arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted' (§ 1286.2, subd. (a)(4)); and (3) '[t]he rights of the party were substantially prejudiced by the refusal of the arbitrators … to hear evidence material to the controversy … .' (§ 1286.2, subd. (a)(5).)" (*VVA-TWO, LLC v. Impact Development Group LLC* (2020) 48 Cal.App.5th 985, 998.)

In addition, "[s]ection 1286.6 permits a trial court to correct an arbitration award in three circumstances: '(a) There was an evident miscalculation of figures or an evident mistake in the description of any person, thing or property referred to in the award; [¶] (b) The arbitrators exceeded their powers but the award may be corrected without affecting the merits of the decision upon the controversy submitted; or [¶] (c) The award is imperfect in a matter of form, not affecting the merits of the controversy.' " (*E-Commerce Lighting, Inc. v. E-Commerce Trade LLC* (2022) 86 Cal.App.5th

58, 63–64.)  "Whether an arbitrator exceeded his authority is a question of law we review de novo."  (*Hoso, supra*, 190 Cal.App.4th at p. 888.)

Further, an appellant's brief must "point out portions of the record that support the position taken on appeal.  The appellate court is not required to search the record on its own seeking error."  (*Del Real v. City of Riverside* (2002) 95 Cal.App.4th 761, 768; see *City of Santa Maria v. Adam* (2012) 211 Cal.App.4th 266, 286–287 ["to demonstrate error, an appellant must supply the reviewing court with some cogent argument supported by legal analysis and citation to the record"]; Cal. Rules of Court, rule 8.204(a)(1)(C).)  In addition, "[a]ppellate briefs must provide argument and legal authority for the positions taken.  'When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived.' "  (*Nelson v. Avondale Homeowners Assn.* (2009) 172 Cal.App.4th 857, 862.)  "We are not bound to develop appellants' arguments for them."  (*In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 830.)

## II

### *The Arbitrator Did Not Exceed His Authority*

The plaintiffs assert the arbitrator exceeded his authority under section 1286.2, subdivision (a)(4) in three ways.  They argue the arbitrator was required to provide them an opportunity to amend their claims before dismissal; the arbitrator could not award attorney's fees for the services of Sparks; and the arbitrator mistakenly awarded attorney's fees associated with services that were not related to the arbitration that should have been excluded.  In addition to seeking reversal on the third ground, the plaintiffs also seek a modification of the award under section 1286.6 to exclude what they contend were the excessively-awarded fees.

11

A

*Denial of Plaintiff's Request to Amend Their Claims*

The plaintiffs argue that the arbitrator exceeded his authority by failing to allow them to amend their claims to add an allegation that the defendants breached the PMA by charging management fees in excess of the 3% specified in that contract. Without further explanation, the plaintiffs assert this decision exceeded the arbitrator's powers under section 1286.2, subdivision (a)(4) because it denied them a fair proceeding. In response, the defendants contend the trial court correctly concluded that the arbitrator's decision not to allow an amendment was a legal determination within the authority given to the arbitrator by the parties' agreement. Specifically, they assert that the arbitrator's legal determination that the claims were barred by the doctrine of collateral estoppel precluded the amendment the plaintiffs now seek and falls within the scope of authority given to the arbitrator by the parties' agreement.

As discussed, when parties agree to arbitrate their dispute, the role of the courts is extremely limited. In addition, "[i]t is well-settled that a trial court's judgment is presumed correct and conclusory claims of error are deemed to be without foundation and require no discussion by the reviewing court. [Citation.] It is not our place to construct theories or arguments to undermine the judgment and defeat the presumption of correctness. When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as forfeited." (*Delta Stewardship Council Cases* (2020) 48 Cal.App.5th 1014, 1075 (*Delta*).)

The plaintiffs assert they "were denied a fair hearing through the Dismissal Order by being prevented from alleging valid claims." They then

12

refer to the Utah Court of Appeals decision on which the arbitrator based its collateral estoppel decision and explain that they requested an amendment but the arbitrator's "analysis in the Dismissal Order does not discuss [their] request to amend what was the initial complaint filed in 2016, prior to the Utah Court of Appeal ruling, to allege that in fact the management fees charged were greater than the 3% limit [contained in the PMA]." The plaintiffs then state, without any legal support or further explanation that "such an amended pleading would not be subject to collateral estoppel by the August 22, 2019 Utah Court of Appeal decision."

These arguments are insufficient to overcome the strong public policy in favor of finality of the arbitration proceeding agreed to by these parties. Further, the plaintiffs' arguments are devoid of any explanation as to how the arbitrator's decision to deny an amendment fell outside the scope of its authority. Of particular note, the plaintiffs have not explained on what authority an amendment would be required under the rules of the AAA, which governed the proceedings under the parties' agreement. This shortcoming in the plaintiffs' argument dooms its appeal on this issue. (See *Delta, supra*, 48 Cal.App.5th at p. 1075 ["conclusory claims of error are deemed to be without foundation and require no discussion by the reviewing court"].)

The plaintiffs also state, again without legal support or further explanation, that because the arbitrator did not afford them a hearing on the dismissal motion, they did not receive fair process. This argument is also not sufficient to show that the arbitrator's decision fell outside the purview of the arbitrator's authority under the parties' agreement. The arbitrator was not bound to follow the procedural requirements that apply in a judicial proceeding and the plaintiffs have not supplied this court with AAA's rules or

13

asserted the arbitrator's process did not follow the applicable rules. (See e.g., *Schlessinger v. Rosenfeld, Meyer & Susman* (1995) 40 Cal.App.4th 1096, 1108 [the "rules of civil procedure typically do not apply in arbitration proceedings"].) In sum, the plaintiffs have failed to show the arbitrator acted outside its authority, as required by section 1286.2, subdivision (a)(4), by denying their request for an amendment.

B

*Award of Attorney's Fees for Sparks's Services*

The plaintiffs next ask this court to invalidate the attorney's fees awarded by the arbitrator to the defendants for the services of Sparks, who is licensed to practice law in Nevada but not California. In essence, the plaintiffs ask this court—as they did in the trial court—to reconsider the arbitrator's determination that the arbitration agreement allowed the defendants to recover fees related to services rendered by an attorney not licensed in this state. That is not the role of this court. As discussed, only limited avenues of relief are available to challenge an arbitrator's decision. The determination of whether particular fees and costs are encompassed within the parties' agreement is an issue that is left to the discretion of the arbitrator under that agreement. The parties' agreement, as discussed, required arbitration of "[a]ny dispute, claim or controversy arising out of or related to" the PMA and required the losing party to pay the attorney's fees and "any other reasonable costs or expenses incurred" by the prevailing party.

The PMA contains two attorney's fees provision governing the arbitrator's decision. The first, section 13.4 of the PMA, states: "**Attorneys' Fees**. In any action or proceeding between Property Manager and the Tenants in Common arising from or relating to this Agreement or the

14

enforcement or interpretation hereof, the party prevailing in such action or proceeding shall be entitled to recover from the other party all of its reasonable attorneys' fees and other costs and expenses of the action or proceeding." The second, contained within the PMA's arbitration provision (section 13.15, set forth in full in the factual and procedural background section of this opinion) states: "The losing party shall bear any fees and expenses of the arbitrator, other tribunal fees and expenses, reasonable attorney's fees of both parties, any costs of producing witnesses and any other reasonable costs or expenses incurred by him or the prevailing party or such costs shall be allocated by the arbitrator."

In his order on the defendants' motion for attorney's fees and costs, the arbitrator concluded that the defendants were the only prevailing party, and that under the arbitration provision they were entitled to all reasonable attorney's fees and costs related to the arbitration. The order explicitly addressed the argument the plaintiffs now make with respect to Sparks, finding that he was retained by the defendants' California counsel, not by the defendants themselves, to provide legal research and litigation advice to the retained attorneys and that this did not constitute the unauthorized practice of law in California. The arbitrator then ruled that the defendants were entitled to the costs of those services.

As the defendants argue, this court cannot revisit the determinations of the arbitrator with respect to the fee award. The question of whether or not the services rendered by Sparks were recoverable by the defendants falls within the scope of the parties' arbitration agreement, which granted the arbitrator the authority to award fees and costs associated with the arbitration proceeding. (See *Gueyffier v. Ann Summers, Ltd.* (2008) 43 Cal.4th 1179, 1182 ["Absent an express and unambiguous limitation in the

15

contract or the submission to arbitration, an arbitrator has the authority to find the facts, interpret the contract, and award any relief rationally related to his or her factual findings and contractual interpretation."].)

The plaintiffs argue the arbitrator's decision ignored Sparks's statements in his declaration that he "was counsel for" Mikles and SCMG, which they assert shows he was retained directly by the defendants. The plaintiffs, therefore, challenge the arbitrator's conclusion that Sparks *did not* directly represent the defendants and instead was retained by counsel to assist with preparation for the arbitration proceeding. But this court cannot revisit such factual findings. (See *Olivera v. Modiano-Schneider, Inc.* (1962) 205 Cal.App.2d 9, 14 ["Findings of arbitrators on questions of fact are final and conclusive and are not subject to judicial review, except under certain circumstances specified by statute ...."].) Rather, whether Sparks engaged in the unauthorized practice of law and if his fees should be excluded as a result were questions for the arbitrator. The arbitrator issued a reasoned decision finding Sparks had not engaged in the unauthorized practice of law and that his fees, except those not directly related to the arbitration, were recoverable. Plaintiffs have not shown the arbitrator exceeded the scope of his authority by rejecting their assertion that fees paid by the defendants for Sparks's services were not recoverable.

C

*Attorney's Fees Incurred Prior to the Commencement of Arbitration*

The plaintiffs also ask this court to revisit the arbitrator's award of attorney's fees incurred prior to the plaintiffs' August 23, 2017 arbitration demand. They contend that because the arbitrator concluded the arbitration provision's fee clause "applie[d] only to the arbitration [and] not to the entire dispute" and excluded fees related to the bankruptcy proceeding that stayed

16

this case, any fees incurred before the precise date of the demand were not recoverable and mistakenly awarded by the arbitrator. The defendants respond that the arbitrator's decision on which fees to award and exclude was within the scope of authority granted to him by the parties' arbitration agreement, and that plaintiffs have provided this court with no basis to revisit that decision. We agree with the defendants.

As noted, the scope of fees and costs recoverable by the prevailing party is an issue falling within the parties' arbitration agreement. The clause concerning attorney's fees in the arbitration provision delegated this determination to the arbitrator. The arbitrator reasonably determined that fees incurred with respect to the bankruptcy claims were not recoverable, but that fees incurred before the parties reached a stipulation to arbitrate were within the terms of the arbitration agreement, which states "[t]he losing party shall bear any fees and expenses of the arbitrator" and "*other tribunal fees and expenses*" incurred by the prevailing party. (Italics added.)

In addition, the plaintiffs have not shown—either by way of the arbitrator's decision or their own parsing of the defendants' attorney's fee billing submissions to the arbitrator—that the fees were mistakenly included in the award. Although the arbitrator's fee award makes clear that it is excluding work performed relating exclusively to the bankruptcy proceeding, as the plaintiffs argued it should, the fee award is silent with respect to the fees and costs that were incurred before the stipulation to arbitrate. It is reasonable (and within the arbitrator's authority) that the arbitrator considered the defendants' submissions and concluded that the work performed prior to the stipulation was recoverable. Thus, we reject the plaintiffs' claim that the fees for services that occurred prior to the arbitration demand were mistakenly awarded.

17

## III

*Revenue & Taxation Code Section 23304.1, Subdivision (a)*

The plaintiffs' final argument on appeal is that the arbitration award, with respect to SCMG, should be deemed voidable because SCMG forfeited its privileges as a California corporation in 2020 by failing to pay tax obligations. The defendants respond that the plaintiffs waived the argument by failing to raise it during the arbitration. Additionally, the defendants assert the trial court correctly found the plaintiffs had not presented sufficient evidence to show SCMG was a forfeited corporation. Finally, the defendants argue the plaintiffs cannot invalidate the arbitration decision under this provision because, as the trial court found, they did not satisfy Revenue and Taxation Code section 23304.5, which requires a party to a contract that is voidable under section 23304.1, subdivision (a) to bring a lawsuit to invalidate the contract and to provide the company with "a reasonable opportunity to cure the voidability...." (Rev. & Tax. Code, § 23304.5.)

The plaintiffs argue the contract became voidable on December 1, 2020 when SCMG's corporate privileges were forfeited. However, the plaintiffs do not dispute that they did not raise the issue of SCMG's corporate status in the arbitration proceeding, and that the arbitrator issued the dismissal decision over a year after the alleged forfeiture of privileges. Citing a certificate issued by the California Secretary of State, the plaintiffs assert that "SCMG's privileges to conduct business in California was forfeited by the California Franchise Tax Board" on December 1, 2020 and that the entity was forfeited on May 25, 2022. However, the arbitrator issued the dismissal decision in February 2022 and the attorney fee award in March 2022, well after the company's privileges were allegedly forfeited. The plaintiffs' failure to assert the argument in the arbitration prevents our judicial intervention

18

now.  (See *Color-Vue, Inc. v. Abrams* (1996) 44 Cal.App.4th 1599, 1602, 1604 ["Because a corporation's failure to pay its franchise taxes results in a lack of capacity to sue or defend, not a lack of standing," the defense " 'must be raised by [the opposing party] at the earliest opportunity or it is waived.... The proper time to raise a plea in abatement is in the original answer or by demurrer at the time of the answer.  [Citation.]  It is a technical objection and must be pleaded specifically.' "].)

Even if the plaintiffs had not waived the issue, we would still reject the argument on the merits.  If, as plaintiffs argue, SCMG's forfeiture triggered the application of Revenue and Taxation Code section 23304.1, subdivision (a) in this situation, the plaintiffs have not shown the trial court erred by finding the plaintiffs had not satisfied Revenue and Taxation Code section 23304.5, a requisite to obtaining the right to void a contract under Revenue and Taxation Code section 23304.1, subdivision (a).

Revenue and Taxation Code section 23304.1, subdivision (a) provides that "[e]very contract made in this state by a taxpayer during the time that the taxpayer's powers, rights, and privileges are suspended or forfeited pursuant to Section 23301, 23301.5, or 23775 shall, subject to Section 23304.5, be voidable at the request of any party to the contract other than the taxpayer."  Revenue and Taxation Code section 23304.5, in turn, states:  "A party that has the right to declare a contract to be voidable pursuant to Section 23304.1 may exercise that right *only in a lawsuit brought by either party with respect to the contract in a court of competent jurisdiction* and the rights of the parties to the contract shall not be affected by Section 23304.1 except to the extent expressly provided by a final judgment of the court, which judgment shall not be issued *unless the taxpayer is allowed a*

19

*reasonable opportunity to cure the voidability under Section 23305.1.*"  (Italics added.)

Plaintiffs presented no evidence in the trial court showing these requirements were satisfied.  Rather, the record shows the plaintiffs asserted the issue only in this litigation, and did not provide any opportunity for SCMG to cure the forfeiture.  Accordingly, we agree with the defendants that the trial court did not err by finding the provision inapplicable here.

DISPOSITION

The judgment is affirmed.  The costs of appeal are awarded to Respondents.

McCONNELL, P. J.

WE CONCUR:


O'ROURKE, J.


IRION, J.