Filed 10/21/24  Morales v. Honey Science Corporation CA2/4

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| JUAN CARLOS MORALES, II,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>HONEY SCIENCE CORPORATION et al.<br><br>Defendants and Respondents. | B331376<br><br>(Los Angeles County Super. Ct. No. 20STCV45280) |
| JUAN CARLOS MORALES, II,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>ELIZABETH YANG.<br><br>Defendant and Respondent. | B331571<br><br>(Los Angeles County Super. Ct. No. 20STCV11118) |

APPEAL from judgments of the Superior Court of Los Angeles County, Michael P. Linfield, Judge. Affirmed.

Sacro & Walker, Lisa M. Burnett; Gagen McCoy and Gregory L. McCoy for Plaintiff and Appellant.

Greenberg Traurig, Ryan C. Bykerk, Karin L. Bohmholdt and Andrea Carmona for Defendants and Respondents.

## INTRODUCTION

Juan Carlos Morales, II (Morales), appeals from judgments entered after the trial court denied his petitions to vacate an arbitration award and granted the petitions of Honey Science Corporation (Honey Science), PayPal, Inc. (PayPal), and Elizabeth Yang (collectively, defendants) to confirm the award.[1] Morales contends: (1) the arbitrator refused to hear material evidence; (2) the arbitrator's refusal to postpone the hearing prejudiced his substantial rights; (3) the arbitrator was biased; (4) the settlement agreement containing the arbitration provision is unenforceable; and (5) the award of attorneys' fees should be reversed or reduced.

The trial court concluded the evidence does not support findings that the arbitrator refused to hear expert testimony, improperly excluded Morales's live testimony, or improperly refused to postpone the hearing. It further concluded Morales's other contentions constituted challenges to the legal findings of the arbitrator, which are beyond the permissible scope of a court's

---

1    As described in more detail below, Morales filed two actions in the superior court stemming from the termination of his employment with Honey Science. The actions were both ordered to arbitration and consolidated in a single JAMS proceeding, resulting in a single arbitration award. The parties then respectively filed cross-petitions to vacate (on behalf of Morales) or to confirm the award (on behalf of Honey Science) in both underlying actions in the superior court, which were heard together on June 23, 2023. The court granted the motion to confirm the award and entered substantially identical judgments in each of the underlying matters. Morales filed separate notices of appeal from each judgment, and we granted the parties' joint request to consolidate the appeals for all purposes.

review. The trial court, therefore, confirmed the arbitration award and awarded attorneys' fees to defendants. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

### A. Factual Background

Honey Science provides consumers a service that automatically finds coupon codes for online shoppers and applies them to their orders when they check out. Morales began his employment with Honey Science in February of 2016 as a business development manager. Honey Science terminated Morales's employment on March 8, 2018.[3]

Morales retained counsel to draft a complaint against Honey Science for wrongful termination. Before filing the complaint, however, the parties agreed to mediate the dispute.

The in-person mediation took place on March 28, 2019 before David A. Rotman. During the mediation, Morales and Honey Science entered into a settlement agreement releasing

---

2      The facts stated in this opinion are taken primarily from the arbitrator's Final Award, and other documents submitted in the arbitration for additional background/contextual facts. We have no authority to review the sufficiency of evidence supporting the arbitrator's award. (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 11 (*Moncharsh*).) "We therefore take the arbitrator's findings as correct without examining a record of the arbitration hearings themselves . . . ." (*Advanced Micro Devices, Inc. v. Intel Corp.* (1994) 9 Cal.4th 362, 367, fn. 1.) We also note that, although the parties' briefs contain lengthy factual backgrounds, in this opinion we limit our recitation of the facts to those necessary to provide context for and resolve the issues we are deciding on appeal.

3      Honey Science merged with PayPal in January 2020.

3

Honey Science (and its owners, employees, successors, etc.) from any claims arising from Morales's termination and employment (the settlement agreement). In return, Morales received a settlement check, which he cashed.

One year after the parties entered into the settlement agreement, Morales sued Elizabeth Yang, a former Honey Science employee, for, among other claims, defamation (the *Yang* case). The complaint alleged Morales was abruptly terminated by Honey Science based on Yang's false accusations of sexual harassment.

Morales then filed a separate lawsuit against Honey Science and PayPal to rescind the settlement agreement (the *PayPal* case).[4] The complaint alleged that, after his termination from Honey Science, Morales developed a major depressive disorder with anxious distress, as well as a generalized anxiety disorder which caused him to not be able to think clearly and make reasonable decisions for himself. The complaint further alleged that, on the date of the mediation, Morales was pressured to enter into the settlement agreement by his counsel and counsel for Honey Science. He contends the settlement amount was "unreasonably so far below the potential value of his wrongful termination claims that any rational person would not have accepted the settlement."

## B. Motions to Compel Arbitration

In response to the *Yang* and *PayPal* complaints, defendants moved to compel all claims to arbitration based on the arbitration provision in the settlement agreement. Morales opposed the

---

4      The trial court issued an order relating the *Yang* case and the *PayPal* case.

4

motions on the following grounds: (1) the arbitration provision is unenforceable because Morales was suffering from a serious major depressive disorder at the time he signed the settlement agreement; (2) the arbitration provision is unconscionable; (3) the settlement agreement did not comply with the Older Workers Benefit Protection Act (OWBPA) and thus, the agreement is revocable; and (4) the allocation of the settlement funds may be illegal and thus render the entire settlement agreement void and unenforceable. In the *Yang* case, the trial court granted Yang's motion to compel arbitration based on its finding that a written arbitration agreement exists between the parties, which contains a clear and unmistakable delegation clause that reserves questions of enforceability for the arbitrator. In the *PayPal* case, the trial court issued an order stating that "[p]ursuant to the oral stipulation of the parties at the hearing on the related [*Yang*] case . . . , the Court orders the parties to attend arbitration." The court stayed the cases pending arbitration.

## C. Arbitration Proceedings

After the trial court compelled both cases to arbitration, Morales filed a demand for arbitration with JAMS on January 26, 2022. The demand sought rescission of the settlement agreement based on lack of capacity, fraud and coercion, and declaratory relief. Morales claimed he was suffering from significant trauma as a result of a major depressive order caused by his wrongful termination, and he was unduly pressured to sign the settlement agreement. Morales also asserted a claim for defamation against Yang "who falsely accused [him] of sexually harassing . . . female employees of Honey Science."

The parties selected Judge Elizabeth Allen White (Ret.) as the arbitrator. On May 6, 2022, Judge White conducted a

preliminary hearing and issued a scheduling order. The order set the evidentiary hearing for June 28-30, 2023, but noted the parties were waitlisted for March 21-23, 2023. According to the order, JAMS would notify the parties if and when the waitlisted dates became available. As relevant here, the order stated: "Counsel shall identify all non-rebuttal percipient and expert witnesses expected to testify at the Hearing . . . not later than May 15, 2023. The witness designations may be supplemented by May 29, 2023." The order further instructed the parties to submit a joint discovery plan, in which the parties were to establish a "procedure for the identification of expert witnesses and related discovery" unless the procedure set forth in the order was acceptable.

The parties submitted their "Joint Discovery Stipulation and Order" on June 6, 2022. They agreed that experts would be designated "120 days prior to the arbitration hearing and deposed within 30 days" and rebuttal experts would be designated "60 days prior to the arbitration hearing and deposed within 30 days after being so designated."

On September 21, 2022, JAMS informed the parties, by email, that the waitlisted hearing dates had become available and the hearing "is now set to go forward on March 21-23, 2023."

On October 14, 2022, Judge White issued Scheduling Order No. 2, which amended certain deadlines to correspond to the new hearing date. Specifically, Scheduling Order No. 2 provided: "Counsel shall identify all non-rebuttal percipient and expert witnesses expected to testify at the [h]earing . . . not later than February 20, 2023. These witness designations may be supplemented by February 27, 2023."

6

On February 1, 2023, defendants moved for leave under JAMS Rule 18 to file a summary disposition motion. On February 8, 2023, Morales opposed the motion and, for the first time, disclosed the name of an expert witness: "[A] forensic psychologist, Dr. David Appleton, who has expertise in drug, alcohol and substance abuse issues, and will testify unequivocally that Mr. Morales consumed so much alcohol that he was not competent to grasp the terms of the settlement that he allegedly signed."

On February 15, 2023, Judge White granted defendants' request for leave to file the dispositive motion. On February 17, 2023, Morales's counsel sent an expert disclosure letter to defendants' counsel identifying David Appleton, Pys.D., and "Darrell O. Clardy, Psy.D., Ph.D., Analytical & Forensic Toxicology, Inc." The letter concluded: "The above referenced names of the experts are the only experts we intend to call for testimony at the Arbitration."

Morales opposed the summary disposition motion on February 23, 2023. In his opposition, Morales stated "Dr. Darrell O. Clardy will testify concerning the issue of Mr. Morales['s] level of intoxication at the mediation." Morales also cited a report of a third expert (which he previously withheld as subject to the mediation privilege) and argued that his "situation was an extreme case because not only did it involve his lack of mental capacity based on his severe depression and anxiety which was diagnosed by Beth Rosenblat . . . , but also his mental capacity was significantly impaired by the amount of alcohol he consumed during the . . . mediation . . . ."

Defendants submitted a letter brief to Judge White arguing that, in the event their dispositive motion is denied, Morales's

"sudden identification" of experts in his opposition was untimely and those experts should be excluded. They relied on the joint discovery stipulation, which stated initial experts shall be designated 120 days prior to the arbitration hearing, i.e., November 21, 2022. They asserted Morales's late designation of experts in February 2023 did not give them time "to designate a rebuttal expert . . . , or to depose Morales's" experts. Before obtaining a ruling, defendants filed a second letter brief seeking relief from the arbitrator based on Morales's alleged failure to confirm expert deposition dates.

Morales's counsel responded to the letter brief, stating in part that they did not disclose experts until February 2023 because they "sincerely believed that the disclosure date based upon . . . Scheduling Order No. 2 was February 20, 2023." Morales's counsel further explained that they "believed . . . Scheduling Order [No. 2] indicating disclosure of experts by February 20, 2023, superseded the Joint Discovery Plan which deadlines were originally based on a June 28, 2023 arbitration date." The letter concluded with a request for a continuance of the hearing "[b]ased upon the conflicting discovery dates referenced above . . . and the fact that [Morales's] counsel's wife will be having a major surgical procedure in March right around the time of the presently scheduled arbitration."

Defendants' counsel then emailed Morales's counsel stating: "With regard to the arbitration date, I think the last hearing made clear that Judge White would prefer to just determine the [summary disposition motion] and that may moot any need to continue the hearing date. I'd also prefer to go that route and would prefer to simply prepare accordingly. But just to be clear, we are certainly not going to demand that you attend an

arbitration while your wife is undergoing surgery. If your wife's health and surgery will ultimately interfere with those dates and the arbitration is still set to go forward, do know that we will not stand in the way of a continuance request if it comes to that."

After holding a hearing on February 27, 2023, Judge White issued a ruling excluding Morales's experts for failure to timely designate them. Judge White found Morales did not designate experts before November 2022 (i.e., 120 days before the hearing), but rather first indicated he had experts expected to testify in a letter to the arbitrator dated February 8, 2023, and again at a hearing on February 15, 2023. She further found defendants had "been unable to depose [Morales's] experts due to the compressed time frame before the March 21 arbitration date and ha[ve] thus been prejudiced." Based on these findings, Judge White precluded Morales from calling any experts, including, but not limited to, David Appleton, PhD., Darrell O. Clardy PhD., and Beth Rosenblatt.

On March 3, 2023, Judge White granted defendants' motion for summary disposition after a hearing by conference call. Judge White reasoned: "Regarding [ ] Morales'[s] claim that he was suffering from depression and anxiety so severe that he was incapable of contracting, [Morales] appears to promise no other evidence than the testimony of experts, but such evidence has been precluded by [Morales's] own delay. As to intoxication, [Morales] does not claim that he can show that the consideration in the settlement agreement was inadequate or that the settlement agreement was so unfair as to suggest that he was taken advantage of. Moreover, as with evidence of his depression and anxiety, expert evidence about his intoxication or evidence from the mediation is barred and is of no help to [Morales]."

9

Judge White further found statements allegedly made by Honey Science executives (offering to help him find another job, cautioning him that if he proceeded with litigation his stock options would not be available, and a "scarlet letter" would be added to his employment file), did not rise to the level of duress or fraud. She therefore concluded "no triable issue exists as to [ ] Morales'[s] claim to rescind the contract because duress and lack of capacity cannot be established on this record, and [ ] Morales is unable to supplement it."

On May 4, 2023, Judge White entered a final award in favor of defendants, and awarded defendants $317,653.83 in attorneys' fees as the prevailing parties.

### D. Petitions to Vacate and Confirm the Award

Defendants petitioned the superior court to confirm the award (Code Civ. Proc., § 1286)[5]; Morales petitioned for the award to be vacated (§ 1286.2). The parties filed substantially identical petitions in the *Yang* and *PayPal* cases. Morales argued vacation of the award is warranted because the arbitrator: refused to hear material evidence; caused prejudice to Morales by refusing to postpone the hearing; and exceeded her authority by issuing an award that violates Morales's statutory rights. He further argued that because the award must be vacated, the attorneys' fee award cannot stand. The trial court disagreed, holding the evidence does not support a finding that the arbitrator improperly refused to hear expert testimony nor that the arbitrator improperly excluded Morales's live testimony. The court further held the arbitrator did not act improperly nor

---

5    All further undesignated statutory references are to the Code of Civil Procedure.

10

prejudice Morales by refusing to postpone the arbitration hearing. Finally, the court held it lacked jurisdiction to review Morales's remaining arguments regarding whether the settlement agreement was interpreted correctly, whether the arbitrator correctly weighed the evidence, and whether the arbitrator made correct determinations on contract defenses, stating those matters are "solely to be determined by the [a]rbitrator" and are "unreviewable by the Court."[6]

The trial court confirmed the award, and entered judgment on July 18, 2023 in favor of Honey Science and PayPal in the *PayPal* case. Defendants then filed their memorandum of costs, and moved for attorneys' fees incurred in the trial court proceedings in the amount of $52,937.30. The court awarded defendants' attorneys' fees and costs in the reduced amount of $25,222.81.[7]

The trial court subsequently entered an amended judgment in the *PayPal* case to reflect the attorneys' fees and costs awarded. The court entered a separate judgment in favor of Yang.

---

6    This language is taken from the order issued in the *Yang* case. In the *PayPal* case, the trial court's minute order states: "The Parties request the exact same relief and make the exact same arguments in this case as are made for the same petitions in [the *Yang* case], which is related to this case. [¶] For the reasons stated in that Order, there are no grounds upon which to vacate the Arbitrator's award. Thus, the Court cannot vacate the award."

7    The trial court awarded Honey Science and PayPal $12,617.50, and awarded Yang $12,605.31, for a total award of $25,222.81.

11

Morales filed two notices of appeal from the judgments. As noted above, we consolidated the appeals for all purposes.

**DISCUSSION**

## 1. Legal Principles and Standard of Review

"We review de novo the trial court's order confirming the arbitration award." (*Greenspan v. LADT, LLC* (2010) 185 Cal.App.4th 1413, 1435.) "The scope of judicial review of arbitration awards is extremely narrow because of the strong public policy in favor of arbitration and according finality to arbitration awards." (*Ahdout v. Hekmatjah* (2013) 213 Cal.App.4th 21, 33 (*Ahdout*).) Thus, "an arbitrator's decision is not generally reviewable for errors of fact or law, whether or not such error appears on the face of the award and causes substantial injustice to the parties." (*Moncharsh, supra,* 3 Cal.4th at p. 6.) "However, Code of Civil Procedure section 1286.2 provides limited exceptions to this general rule." (*Ahdout, supra*, 213 Cal.App.4th at p. 33.)

Morales relies on section 1286.2, subdivisions (3)-(5) as the statutory bases for challenging the award. Those sections allow a court to vacate an award when: "[t]he rights of the party were substantially prejudiced by misconduct of a neutral arbitrator" (§ 1286.2, subd. (3)); "[t]he arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted" (§ 1286.2, subd. (4)); or "[t]he rights of the party were substantially prejudiced by the refusal of the arbitrators to postpone the hearing upon sufficient cause being shown therefor or by the refusal of the arbitrators to hear evidence material to the controversy or by other conduct of the arbitrators contrary to the provisions of this title." (§ 1286.2, subd. (5).)

12

## 2. The Trial Court Properly Denied Morales's Petition to Vacate the Arbitration Award

### A. Exclusion of Morales's Proffered Expert Testimony

Morales contends the arbitrator improperly refused to hear testimony from Morales's expert witnesses: (1) psychologist Beth Rosenblatt; (2) toxicologist Darrell O. Clardy; and (3) mental health expert Dr. David Appleton. For the reasons discussed below, we conclude Judge White's ruling excluding expert testimony does not warrant vacation of the award.

The arbitrator has broad discretion in conducting the hearing and ruling on admission and exclusion of evidence. (See § 1282.2, subd. (c) ["The neutral arbitrator shall preside at the hearing, shall rule on the admission and exclusion of evidence and on questions of hearing procedure and shall exercise all powers relating to the conduct of the hearing"].) "[A] challenge to an arbitrator's evidentiary rulings or limitations on discovery should not provide a basis for vacating an award unless the error *substantially prejudiced* a party's ability to present *material* evidence in support of its case." (*Schlessinger v. Rosenfeld, Meyer & Susman* (1995) 40 Cal.App.4th 1096, 1110, italics in original (*Schlessinger*).) "'Where, as here, a party complains of excluded material evidence, the reviewing court should generally focus first on prejudice, not materiality. To find substantial prejudice the court must accept, for purposes of analysis, the arbitrator's legal theory and conclude that the arbitrator might well have made a different award had the evidence been allowed.'" (*Id*. at p. 1111.)

As discussed above, the parties briefed their respective positions regarding the expert designation deadline. Defendants

13

argued Morales's identification of experts in February 2023 was untimely because, per the parties' stipulated Joint Discovery Plan, experts were to be disclosed 120 days before the hearing (i.e., November 2022). Morales countered that Judge White's Scheduling Order No. 2, issued October 14, 2022, indicated the deadline for expert disclosures was February 20, 2023 (i.e., a month before the scheduled hearing), and that order superseded the Joint Discovery Plan. After a hearing on the issue, Judge White agreed with defendants, concluding Morales failed to timely designate experts based on the parties' Joint Discovery Plan. She further concluded defendants were prejudiced because Morales did not identify experts until February 2023, leaving defendants with no time to depose the experts and designate rebuttal experts before the March 21 hearing.

We acknowledge the potential for confusion regarding the expert disclosure deadlines. After JAMS moved the hearing to March 21-23, 2023, Judge White issued Scheduling Order No. 2 indicating the deadline for expert disclosures was February 20, 2023. But that date conflicted with the parties' Joint Discovery Plan. According to the Joint Discovery Plan, experts were to be disclosed 120 days before the hearing (i.e., November 2022). Thus, Morales's counsel's belief that the expert disclosure deadline was the new date provided in Scheduling Order No. 2 was not unreasonable.

Even if Judge White erred by excluding Morales's experts for failure to timely designate them, however, the proffered expert testimony would not have changed the outcome.[8]

---

8    We limit our prejudice analysis to the proffered expert testimony of Dr. Appleton and Dr. Clardy. As noted above, Morales's counsel's February 17, 2023 letter unequivocally stated

14

(*Schlessinger, supra,* 40 Cal.App.4th at p. 1111.) In Morales's opposition to defendants' summary disposition motion, Morales stated: "According to Dr. Appleton, [Morales] did not attend this mediation to sabotage it. He attended to try and settle the case, but as the day progressed, which ended up taking the entire day, he became increasingly unable to function in a normal capacity when he finished drinking all of the vodka." Morales further states in his brief on appeal that Dr. Appleton "would have provided testimony that [ ] Morales had a history of alcohol abuse and depression, and that he should not have proceeded with the mediation as the combination of alcohol consumption, lack of sleep, inadequate nutrition, and major depression left him 'mentally and cognitively impaired.'" And according to Morales, Dr. Clardy "would have presented testimony that a person who had consumed the level of alcohol [ ] Morales did at the mediation would have been meaningfully impaired in cognition, memory, and overall functioning, yet might have been able to camouflage those impairments to some extent."

In her ruling on the summary disposition motion, Judge White explained that "a court will not set aside a transaction

Dr. Appleton and Dr. Clardy were the "only experts [Morales] intend[ed] to call for testimony at the Arbitration." The arbitrator could not have erred, therefore, by purportedly excluding expert testimony of an expert witness Morales did not intend to call. Moreover, Morales first disclosed Rosenblatt's report on February 23, 2023, when he cited it in his opposition to the summary disposition motion. As noted above, he previously withheld the report as being subject to the mediation privilege. Thus, Morales failed to timely designate Rosenblatt even if we accept Morales's position that the expert disclosure deadline was February 20, 2023.

merely because a party was voluntarily intoxicated, although the transaction may be rescinded when the other party knows and has taken advantage of the condition for a grossly inadequate consideration."[9] There is no evidence in the record that defendants' counsel knew Morales was intoxicated at the mediation. Thus, expert testimony regarding Morales's level of intoxication, and testimony that Morales may have been able to conceal his condition, is of no help to Morales. If defendants were unaware of Morales's alleged condition during the mediation, they could not have taken advantage of it.

Accordingly, we cannot say that a different result might have been reached had Morales been allowed to offer the expert testimony. (*Schlessinger, supra*, 40 Cal.App.4th at p. 1111.) Judge White's exclusion of Morales's experts, therefore, is not a basis for vacating the award.[10]

### B. Exclusion of Live Testimony

Morales contends the arbitrator improperly resolved credibility issues on summary disposition based on excerpts from

---

9 Neither party contends this standard is incorrect, and, in any event, "an arbitrator's decision is not generally reviewable for errors of fact or law[.]" (*Moncharsh, supra*, 3 Cal.4th at p. 6.)

10 Morales also argues California Evidence Code section 1119 (describing the mediation privilege) does not prevent Morales or his experts from testifying about his own physical and mental state at the time of the mediation. This argument is irrelevant, however. As discussed above, Judge White excluded expert testimony for failure to timely designate, not because of the mediation privilege. And, Morales does not point to any other evidence submitted in opposition to defendants' motion for summary disposition that was excluded based on the mediation privilege.

his deposition. He argues the exclusion of his own live testimony caused prejudice to his substantial rights under section 1286.2, subdivision (a)(5). It is well settled, however, that "the arbitrator's obligation 'to hear evidence' does not mean that the evidence must be orally presented or that live testimony is required." (*Schlessinger, supra*, 40 Cal.App.4th at p. 1105.) Rather, "[a]n arbitrator 'hears' evidence by providing a 'legal hearing,' that is, by affording an 'opportunity to . . . present one's side of a case.' [Citation.] An arbitrator also 'hears' a matter by 'consider[ing] a motion upon presentation thereof by counsel.'" (*Ibid*.)

Judge White granted defendants' motion for summary disposition after considering briefing from both parties, evidence submitted in support of, and in opposition to, the motion, as well as arguments of counsel. She concluded no triable issues of material fact existed, and thus, disposed of the case prior to a hearing with live testimony. To the extent Morales is arguing Judge White erred by granting summary disposition because triable issues of material fact existed and she improperly made credibility determinations, Morales is simply disputing the arbitrator's factual findings and legal conclusions, which are beyond the scope of our review. (*Moncharsh, supra*, 3 Cal.4th at p. 6.)

### C. The Arbitrator's Alleged Refusal to Postpone the Hearing

Morales next contends the arbitrator's refusal to grant a continuance of the evidentiary hearing prejudiced Morales "in that it deprived him of testimony that was critical to his incapacity argument." A continuance of the hearing, however, would be of no consequence. As discussed above, Judge White

17

granted defendants' dispositive motion, obviating the need for an evidentiary hearing.

It appears that what Morales is really arguing is that Judge White should have simply moved the hearing date to allow more time for defendants to depose his experts and to designate rebuttal experts. But this argument is merely a variation of Morales's argument that Judge White erred by excluding expert testimony. Thus, we reject this argument for the same reasons discussed above in section 2.A. Judge White acted within her discretion by ruling on the briefed summary disposition motion rather than delaying the proceedings (see § 1282.2, subd. (c)), and Morales has not demonstrated he was prejudiced by the exclusion of expert testimony.

We likewise reject Morales's argument premised on the arbitrator's purported refusal to postpone the hearing due to counsel's family medical emergency. The record reflects no such thing occurred. Morales's counsel informed the arbitrator that his wife was scheduled to have a major surgical procedure in March "right around the time of the presently scheduled arbitration." But Judge White granted summary disposition against Morales on March 3, 2023. Thus, it was not necessary to continue the arbitration hearing because the case was disposed of before the scheduled arbitration hearing and surgery.

### D. Arbitrator Bias

For the first time on appeal, Morales argues the award should be vacated because Judge White demonstrated bias against Morales. In support of his argument, Morales contends the final award "exude[s] bias" because it: (1) repeatedly cites Morales's delay in designating experts when, according to Morales, he timely designated experts; (2) asserts without

18

support that statements made by Honey Science executives to Morales were neither wrongful nor untrue[11]; (3) proclaims Morales was not taken advantage of with respect to the settlement agreement, which ignores that Morales pled his stock options alone were worth upwards of $2.5 million, yet the agreement netted him less than 10 percent of that amount; and (4) found a provision in an agreement prohibiting reemployment is valid when the employee engaged in sexual harassment, but Morales "denies all accusations of sexual misconduct in their entirety."

By not raising this argument in the trial court in support of his petition to vacate the award, Morales forfeited it on appeal. (See *Howitson v. Evans Hotels, LLC* (2022) 81 Cal.App.5th 475, 489 ["It is well settled that the failure to raise an issue in the trial court typically forfeits on appeal any claim of error based on that issue"].) In any event, we conclude Morales's claim of arbitrator bias fails on the merits. None of the grounds on which

---

11 Morales alleged Honey Science executives made the following statements: (1) The CFO and Co-Founder (Ryan Hudson) represented that his girlfriend had a start-up company and would recommend Morales for a position at the company, but the recommendation did not occur; (2) The CEO and Co-Founder (George Ruan) represented he was ready to introduce Morales to two unidentified companies for possible employment, but the introductions never came; (3) The COO represented to Morales that he intended to introduce Morales to the CEO of a company known as Joymode for potential employment, but the introduction did not occur; (4) Hudson told Morales if he entered into litigation regarding his employment termination, his stock options would not be available; and (5) Ruan told Morales that a "scarlet letter" would be placed in his employment file if he did not drop his claims for wrongful termination.

Morales relies establishes Judge White was biased against him. Instead, each purported ground concerns alleged legal or factual errors, and is essentially a complaint regarding how Judge White decided the case. The merits of the parties' controversy, even if dressed up as an arbitrator bias claim, are not subject to judicial review. (See *Moncharsh, supra*, 3 Cal.4th at pp. 6, 11 ["an arbitrator's decision is not generally reviewable for errors of fact or law, whether or not such error appears on the face of the award and causes substantial injustice to the parties" and "'[t]he merits of the controversy between the parties are not subject to judicial review'"].)

## E. Arguments Regarding Enforceability of the Settlement Agreement

Morales lastly argues the settlement agreement is void for two reasons: (1) the agreement's provision prohibiting future employment at Honey Science or any majority-owned subsidiary of Honey Science violates Business & Professions Code section 16600; and (2) the settlement agreement does not comply with the OWBPA. For the reasons discussed below, we conclude Morales forfeited these arguments.

### i. Business and Professions Code section 16600

Morales contends the settlement agreement (which includes the arbitration agreement) is void in its entirety because it contains a provision prohibiting future employment.[12] (See Bus.

---

12     Section 7 of the settlement agreement provides: "Morales agrees not to apply for employment in the future with the Company or any majority-owned subsidiary of the Company. Morales further agrees that the Company and any majority-

& Prof. Code, § 16600, subd. (a) ["Except as provided in this chapter, every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void"].) When—as here—a party contends the alleged illegality constitutes grounds to revoke the entire settlement agreement, he or she is required to first raise the issue of illegality in the trial court to preserve the issue for later judicial review. (See *Moncharsh, supra*, 3 Cal.4th at p. 30 [a party contending the entire contract is illegal must raise the illegality issue at the outset in the trial court prior to participating in the arbitration process]; see also *Pearson Dental Supplies, Inc. v. Superior Court* (2010) 48 Cal.4th 665, 680-681 [plaintiff forfeited argument that arbitration agreement was unconscionable and contrary to public policy by failing to raise the argument in opposition to the petition to compel arbitration].)

As discussed above, although Morales opposed defendants' petition to compel arbitration, he did so on various grounds including unconscionability, noncompliance with the OWPBA, and incapacity. He did not raise the issue of illegality based on Business and Professions Code section 16600. Rather, he waited until his opposition to defendants' motion for summary disposition in the arbitration to raise the argument for the first time. Under *Moncharsh*, this was too late.

Morales maintains "the defense of illegality may be raised at any time[,]" citing *South Bay Radiology Medical Associates v. Asher* (1990) 220 Cal.App.3d 1074, 1079-1080 (*South Bay*). Our Supreme Court explicitly rejected this proposition, however: "We disapprove [*South Bay*] insofar as it suggests that an 'attack on

owned subsidiary of the Company may reject without explanation or liability any application by Morales for employment.

the arbitrator's decision [that] is based on alleged illegality' is a defense that 'may be raised at any time.'" (*Law Finance Group, LLC v. Key* (2023) 14 Cal.5th 932, 959, fn. 5.) Morales alternatively claims the issue has not been forfeited because he sought declaratory relief in his initial complaint for rescission of the agreement, and briefed the issue at his earliest opportunity to do so in the arbitration. These arguments miss the point. Although Morales's complaint sought rescission of the agreement, it did so on grounds other than an alleged illegal restraint on trade. And, whether Morales raised the issue at his earliest opportunity in the arbitration is debatable[13], but in any event, irrelevant. As stated in *Moncharsh*, a party contending the alleged illegality constitutes grounds to revoke the entire settlement agreement is required to first raise the issue of illegality in the *trial court*, not the arbitration. (*Moncharsh, supra*, 3 Cal.4th at p. 30.)

Accordingly, we conclude Morales forfeited his argument regarding an alleged illegal restraint on trade in the agreement. (*Moncharsh, supra*, 3 Cal.4th at p. 30; see also *Cummings v. Future Nissan* (2005) 128 Cal.App.4th 321, 328 ["The forfeiture rule exists to avoid the waste of scarce dispute resolution resources, and to thwart game-playing litigants who would conceal an ace up their sleeves for use in the event of an adverse outcome"].)[14]

---

13      In the Final Award, Judge White noted this argument "was not properly pled and was raised for the first time in his [o]pposition to the [m]otion for [s]ummary [d]isposition."

14      Even if we were to consider this argument on the merits, there is no evidence in the record demonstrating section 7 of the settlement agreement places a restraint of a substantial

### ii. Older Workers Benefit Protection Act (OWBPA)

The OWBPA, which is part of the Age Discrimination in Employment Act (ADEA), imposes specific requirements for releases covering ADEA claims. (29 U.S.C. § 626(f)(1).) Under the OWBPA, an employee may not waive an ADEA claim unless the release satisfies the OWBPA's requirements, including that "the agreement provides that for a period of at least 7 days following the execution of such agreement, the individual may revoke the agreement, and the agreement shall not become effective or enforceable until the revocation period has expired." (29 U.S.C. § 626(f)(1)(G).)

Under the settlement agreement, Morales released all claims against Honey Science (and its successors, assigns, employees, etc.) relating to "Morales's hire, employment remuneration or employment separation" and claims "arising in tort, including, without limitation, [c]laims of wrongful dismissal or discharge, discrimination, harassment, retaliation,

---

character on Morales's ability to practice his profession. (See *Golden v. Cal Emergency Physicians Med. Grp*. (9th Cir. 2018) 896 F.3d 1018, 1020, quoting *Chamberlain v. Augustine* (1916) 172 Cal. 285 ["[Business and Professions Code section 16600] applies not only to noncompetition agreements but also to any contractual provision that places a 'restraint of a substantial character' on a person's ability to practice a profession, trade, or business"].) Morales merely speculates, without citation to the record, that "if the 'majority owned subsidiary' language is taken to apply to PayPal Ventures and its vast swathe [*sic*] of market share in the e-commerce industry, employment options for [ ] Morales are scarce." Morales conceded at his deposition, however, that he has applied to several jobs in the "tech industry."

misrepresentation, defamation, slander, libel, infliction of emotional distress, violation of public policy, and/or breach of the implied covenant of good faith and fair dealing[.]" The agreement does not, however, contain the language required by the OWBPA.

In ruling on defendants' motion to compel arbitration, the trial court found the issue of whether the agreement was unenforceable based on noncompliance with the OWBPA was for the arbitrator to decide based on the arbitration agreement's delegation clause. It is undisputed, however, that Morales did not raise the issue in arbitration. As our Supreme Court has held, a party to an arbitration may not "sit on his rights, content in the knowledge that should he suffer an adverse decision, he could then raise the illegality issue in a motion to vacate the arbitrator's award. A contrary rule would condone a level of 'procedural gamesmanship' that we have condemned as 'undermining the advantages of arbitration.'" (*Moncharsh, supra,* 3 Cal.4th at p. 30.) We therefore deem this issue forfeited.[15]

## 3.   **Attorneys' Fees**

After the trial court confirmed the arbitration award, it awarded defendants their attorneys' fees and costs incurred in the trial court proceedings in the reduced amount of $25,222.81.

As an initial matter, it is unclear whether Morales is disputing the attorneys' fees awarded by the arbitrator and the trial court, or only those awarded by the trial court. In any event,

---

15    We note that even if Morales preserved this issue for appeal, he does not point to any case law or language in the statutory scheme to support his argument that failure to comply with the OWBPA invalidates the entire agreement (as opposed to merely preventing defendants from enforcing the agreement's release of a claim brought under the ADEA).

24

we conclude Judge White and the trial court properly awarded attorneys' fees to defendants as the prevailing parties under Civil Code section 1717.

Civil Code section 1717 authorizes an award of attorneys' fees to a prevailing party "[i]n any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded . . . to . . . the prevailing party." (Civ. Code, § 1717, subd. (a).) The settlement agreement included an attorneys' fee provision, which provided: "If it is necessary for either party to file suit to enforce this Agreement, the prevailing party shall recover its reasonable costs of enforcement, including costs and reasonable attorneys' fees." Morales contends fees incurred in the *Yang* case are not subject to the attorneys' fee provision because "[i]t is not a suit to enforce the settlement agreement and does not even sound in contract." He therefore proposes the "fee award be reduced by 50% to account for the *Yang* [case]." We are unpersuaded.

"[T]he pivotal point in the analysis whether a prevailing party is entitled to recover contractual attorney fees for defending against a competing noncontractual claim (when the language of the agreement does not encompass noncontractual claims or is ambiguous) is . . . whether a defense against the noncontractual claim is necessary to succeed on the contractual claim." (*Siligo v. Castellucci* (1994) 21 Cal.App.4th 873, 879 (*Siligo*).) Here, Morales released his claims, including his claim for defamation, against Honey Science and each of its employees. Thus, defending a defamation lawsuit against an employee of the company "constituted part of the cost of enforcing the [settlement agreement]." (*Siligo, supra*, 21 Cal.App.4th at p. 880.) Judge

25

White and the trial court, therefore, properly awarded attorneys' fees to defendants as the prevailing parties in both the *Yang* and *PayPal* cases.

## DISPOSITION

The judgments are affirmed. Defendants are awarded their costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

CURREY, P. J.

We concur:

COLLINS, J.

MORI, J.

26